Spier v. Laman.

## ABNER B. SPIER v. GEORGE W. LAMAN.

The right of the appellee to acquire three hundred and twenty acres, by virtue of his settlement in 1853, and subsequent affidavit and survey has been fully established by a former decision of this court. (Jennings v. De Cordova, 20 Tex. Rep., 512.)

A party, who had purchased a void title to a tract of land, was not thereby precluded, when he ascertained that his title was worthless, from claiming a pre-emption upon the tract so purchased.

An affidavit, made on the 24th day of February, 1854, by a claimant of a pre-emption, that he " believed that he had settled on vacant land, and therefore claimed the right of pre-emption on three hundred and twenty acres, as the law provides," was a substantial compliance with the 6th section of the "Act granting to settlers on public domain pre-emption privileges." (O. & W. Dig., 743, art. 339.)

The title to the league of land was issued to the plaintiff on the 28th December, 1835, after the closing of the land offices; the defendant, in 1854, made a pre-emption settlement on three hundred and twenty acres of the league; the legislature, by a special act passed in 1856, granted the league to plaintiff, with a proviso, " that the act should not interfere with the rights of third parties;" *held*, that the plaintiff could assert neither a legal nor equitable claim to the land at the time of the pre-emption settlement; that he could claim only by virtue of the legislative grant, and he must hold under it subject to the qualifications and limitations provided in the act extending the grant.

It was further held that the settlement and improvement of the land by the defendant, and his affidavit and survey, severed it from the public domain, and gave him an equitable title, which was not affected by the act extending the grant; that the pre-emptor had such an interest or right as, upon his death, would descend to his widow and heirs; or he might sell the same, subject to the performance by the purchaser of the conditions upon which the title is held.

APPEAL from Travis.    Tried below before the Hon. George W. Smith.

The appellant brought an action of trespass to try title, in the District Court of Burnet county, to recover the south half of his headright league of land, situated in Burnet county, and described by metes and bounds.    The original petition was filed on the 20th day of January, 1857, and is in the usual form.    At the Spring Term of the court following, the defendant moved the court for a

change of venue, because the presiding judge had been of counsel in a branch of this cause, which was granted, and the cause was transferred to Travis county. The defendant's original answer, filed before the venue was changed, does not appear in the transcript, but on the 20th day of August, 1858, he files an amended answer, and sets up special defences in the shape of attacks on the plaintiff's title, in which he denies that the plaintiff has any title to the land; denies that it was surveyed for him as his headright in 1835, or at any other time; and averring that if plaintiff ever had claim to the land, that the same was only an equity under the constitution and laws of the late republic, and now State of Texas, which he failed to perfect into a legal right within the time allowed him, and that, therefore, his claim, at and before he took the necessary steps to obtain title, was barred by the statutes of limitations of 20, 10 and 5 years. He, also, sets up a claim to 320 acres of the land, which he alleges is secured to him by virtue of a pre-emption claim commenced by affidavit of settlement made on the 23d day of February, 1854. He further sets up a claim to 200 acres of the land by purchase through a regular chain of title from the plaintiff down to himself, which 200 acres is included in and covered by his 320 acre pre-emption claim.

On the 7th day of December, 1859, the plaintiff filed an amended petition, setting up his emigration to the State of Coahuila and Texas as a colonist, and the head of a family in 1834, and his right under the laws then in force to a league of land; that he applied to the proper officer, and had the league of land mentioned in his original petition surveyed for him as his headright; that he did perform everything on his part necessary to procure a title to said land, previous to the 1st day of November, 1835; but from some cause to him unknown, the title issued to him was not dated until after the Consultation had closed the land office; that he has never received any other land or certificate of headright as a colonist; that he was a resident citizen of Texas before and at the date of the declaration of independence; that he did not leave the country during the campaign of 1836, to avoid a participation in the struggle; that he did not refuse to participate in the war, and that he did not aid or assist the enemy; alleging his continued

possession, cultivation and improvement of said land; his payment of government dues and taxes on the same from the date of the issuance of the title; that the government of Texas has confirmed and recognized his title by acquiescing in the same, and not contesting his right for more than 20 years, and by demanding and receiving the government dues and taxes on the same from the plaintiff; that his claim was delineated on the maps of the country, with his name written in the diagram thereof; that by reason of all the premises, under and by virtue of the laws of the State of Coahuila and Texas, and the constitution and laws of the late republic and now State of Texas, plaintiff acquired an equitable title to the land, which equity was afterwards completed into a perfect and legal title by a grant of the land from the State to the plaintiff on the 1st day of September, 1856, directly made by the legislature of the State of Texas. By further amendment he admits the right of defendant to the 200 acres of land claimed by him under purchase through Wilbarger from plaintiff, but avers that the trespasses complained of were committed on that portion of the land in controversy, situated outside of and beyond the limits of the said 200 acres. He prays for judgment for his damages, rents and profits, and for possession of the land.

On the 8th day of December, 1859, the defendant, by a further amendment, continued his attacks on plaintiff's claim by averring the nullity of his paper title, because the same was issued during the time the land office was closed in 1835, by the Consultation; that his pre-emption claim of 320 acres of the land sued for is not affected by the legislative grant of the land to the plaintiff, because the legislature expressly saves and reserves the rights of third parties; that defendant's rights were acquired anterior to said legislative grant; that the plaintiff's claim for rents is barred by the statute of limitations of two years; that since the institution of the suit, the defendant has obtained a patent for his said pre-emption claim of 320 acres; suggesting adverse possession and improvements made in good faith, and praying for general relief.

On the 8th day of December, the plaintiff, by way of replication or amended petition, alleges that the patent issued to defendant

on his pre-emption claim, was fraudulently issued without any authority of and in contravention of law; that the same is a cloud on his title, and asks to have it cancelled.

On the trial, it was admitted that the Spier league mentioned in the petition of plaintiff, was surveyed in July, 1835. It was in proof that A. B. Spier came to Bastrop county in the fall of 1834; that he was the head of a family; had his family with him; has remained in the country ever since, and was living at the time of the trial upon the headright league which he claimed to have been granted to him as a colonist. The plaintiff then read a receipt of the commissioner of the general land office for the government dues "on the league of land granted to Abner B. Spier on the 28th December, 1835." The receipt was dated April 10, 1841. He, also, read a certificate of redemption of the league from the comptroller, (it having been sold for taxes,) dated 27th day of May, 1852; also a certified plat from the land office, showing that the Spier league was delineated upon the maps of that office; also, tax receipts for several years; also, a special act of the legislature, entitled an act for the relief of David J. Owen and Abner B. Spier," passed September 1, 1856; in which the State "relinquished, granted and conveyed" to A. B. Spier the league in controversy, with the proviso that the "act should not interfere with the rights of third parties." He also proved that the defendant was in possession of some fifteen acres outside of the two hundred acre tract purchased of Wilbarger, and within the league claimed by plaintiff.

The defendant read in evidence his affidavit, made before the deputy surveyor of the Milam land district, on the 24th day of February, 1854, "that he believed that he had settled on vacant land, and therefore claimed the right of pre-emption on three hundred and twenty acres, as the law provides;" also, the field-notes of the survey for the three hundred and twenty acres claimed by him as his pre-emption, dated the 7th July, 1854; also, a patent for the same, issued 29th day of November, 1859; also, a deed from A. B. Spier to Mathias Wilbarger for two hundred acres of said league, dated October 28th, 1848; also, a deed

from said Wilbarger to defendant, for the two hundred acres, dated in April, 1851.

The bills of exceptions of plaintiff recite that " after he had proved his emigration to the country, the payment of the government dues, taxes, and his settlement upon the land, he offered in evidence a translated copy of a title issued on the 28th day of December, 1835, to him, for the land set out in his petition : First, as evidence of an ancient title or grant of land, the same being more than twenty years standing, and having been recognized and acquiesced in by the late government of Coahuila and Texas, the late Republic of Texas, and the present State of Texas, receiving the government dues and taxes thereon, and permitting the plaintiff to remain on said land. Second, as evidence of the locality and boundaries of said land of which he was in possession, and also proof of title, as long continued possession, sufficient to raise a presumption of grant, which was objected to." The objections were sustained, and the plaintiff excepted.

The plaintiff also offered to read a certified copy of the field-notes of said league, taken from the general land office, to show that they had been returned in said office prior to 1850, and previous to the time of the settlement of defendant; which evidence was excluded, and the plaintiff excepted.

The court charged the jury as follows :

" The plaintiff has sued for the league of land, less 200 acres, admitted to have been sold to Wilbarger, and by him to the defendant. The defendant claims 320 acres of the league, including the said 200 acres; the defendant claims the 320 acres as a pre-emptionist, by settlement and improvement made on the same, and residence since 1853, and disclaims all right to the residue of the land. You are charged that the defendant has shown the better title, and you should find in your ·verdict that the 320 acres claimed by the defendant is his property."

Instructions were asked by the plaintiff, submitting to the jury the determination of the facts involved in the issues made by the pleadings, which were refused by the court. The jury found a verdict for the defendant, and judgment was rendered accordingly.

14*

Plaintiff's motion for new trial was overruled by the court, and he gave notice of appeal.

*M. H. Bowers*, for appellant.—A branch of this case was before this court in the case of Jennings v. DeCordova, (20 Tex., 508,) to which reference is made in connection with the facts developed by the record now before the court for a history of the case.

In that case, the contest was between a locator and a settler claiming by purchase under the old original title, and also by virtue of a pre-emption claim.

In the case at bar, the contest is between the original grantee of the old grant and a pre-emptor. In the case now before the court, as in that case, it is conceded that the appellant's paper title, issued to him during the time when the land office was closed by the act of the Consultation, is void. But we contend that the appellant's claim to the land is not dependent upon the paper title. His survey was legally made for him at a time when the land was subject to survey. He was entitled by virtue of his rights as a colonist to a league of land, and to select that particular league which he did. He subsequently paid the price of the land in government dues, and complied with all the requirements of law necessary to secure him in the enjoyment of his right. His emigration to the country, selection of the land, having it surveyed and delineated on the maps, and payment of the government dues, constitutes his legal rights. The paper title issued to him by William H. Steele, on the 28th day of December, 1835, is only the evidence of that right. The evidence being void, does not affect his otherwise valid, equitable and legal right. His claim to the land does not derive its validity and legal vitality from the mere ministerial act of the commissioner who issued the paper title, nor is it affected by any of these subsequent irregularities, or even void acts. (Miller v. Alexander, 8 Tex., 36, and 13 Tex., 497; Jackson v. Steinbergh, 1 Johnson's cases, 154; Cooper v. Galbraith, 3 Wash. C. C. R., 546.

The denunciation of the constitution is not against these legally acquired rights, but simply against the ministerial act of the

Spier v. Laman.

person who issued the paper title. "It is hereby declared that all surveys and locations of land made since the act of the late Consultation closing the land office, and all titles to land made since that time are and shall be null and void." (Cons. Rep., general provisions, sec. 10.) But the appellant's location and survey was not "made since the act of the late Consultation closing the land office." His land was located and surveyed in July, 1835, and the land office was not closed until the 13th November following. That it was not the intention of the Consultation to impair, or in any manner affect pre-existing meritorious rights, is clearly to be inferred from the 15th article of the plan and powers of the provisional government, which provides that "all persons now in Texas and performing the duties of citizens, who have not acquired their quantum of land, shall be entitled to the benefit of the laws of colonization under which they emigrated." The appellant's claim was, therefore, one of the class specially guarded by this act of the Consultation, and against which the constitution subsequently adopted raises no objection. This right and claim to the land was recognized and acquiesced in by the government for over twenty years, and as soon as the defect in his paper title was discovered, this defect was cured by the political authority of the State, the sovereignty of the soil. There are no objections urged against the claim that go to its intrinsic merits, nothing that attacks or seeks to impair his original equitable title and we, therefore, respectfully contend that it was in the power of the State, possessing as she did the right of eminent domain, never having parted with the fee to the land to any other claimant, to say that she would not hold him liable for her own dereliction in not passing the title, when it ought to have been passed, and by a legislative enactment grant to him the land. And that when she did this on the first day of September, 1856, (Spec. Laws adjourned session 6th legistature, p. 275,) the legal title thus given him would relate back and operate a confirmation of his valid equitable claim from its inception in 1835. This position is so well sustained in Hosner v. De Young, 1 Tex., 765; Kemper v. Corporation of Victoria, 3 Tex., 135; Warner v. Shuman, 5 Tex., 441; Howard and wife v. Perry, 7 Tex., 259; Lewis v. Mixon, 11 Tex., 564; Hart v.

Gibbons, 14 Tex., 213; Jennings v. DeCordova, 20 Tex., 508; Hamilton v. Avery, Id., 612; and in Lee Bois v. Bramell, 4 How., 449; Stoddard's heirs v. Chambers, 2 How., 284; Mills v. Stoddard, 8 How., 345, as to require no further argument. We respectfully submit that the appellant has brought his case within the pale of the doctrines maintained in these decisions, and shown such an equity in himself as will sustain his subsequent legislative grant, and cause it to relate back and override the defendant's intervening claim.

It was insisted by the defendant in the court below, and we suppose will be urged by the appellee in this court, that his claim set up for 320 acres of the land in controversy, was not affected by this legislative grant, because by the third section of that act, it is provided "that this act shall not interfere with the rights of third parties." To this position we answer that the appellee is not in a condition to claim or receive any benefit derived from that reservation, because:

1st. The "rights of third parties" therein protected are such rights or claims as are and may be legally held *adverse* to the benefits conferred by this act. The defendant derives the title, under which he went into possession of the land, by mesne conveyances from the plaintiff. He is estopped from setting up this possession (under and by virtue of which he seeks to create a right to a pre-emption) to the prejudice of his vendor and all under whom he claimed. Hence he has no rights that can legally be maintained adverse to the plaintiff's title.

The defendant in his answer, sets up his purchase of 200 acres of the land from Wilbarger, and that Wilbarger purchased from A. B. Spier, the plaintiff. And by exhibits he sets out the deeds. On the trial he read these deeds in evidence, both of which are warranty deeds, and are duly recorded, the one from Spier to Wilbarger on the 13th day of November, 1848, and the one from Wilbarger to defendant on the 7th day of October, 1851.

The testimony of witness Rountree was that defendant told him he purchased the 200 acre tract he was living on from Wilbarger. Wilbarger held title under Spier. The testimony of McFarland was, that defendant was in possession since the year 1853. He

went into possession then under the title derived from the plaintiff. His possession must be deemed to have been held under that, and to enure to strengthen and perfect it. (Miller and Ross v. Shackleford, 4 Dana. R., 264.)    In the case referred to, the court says, "However weak the plaintiff's right of entry might be as compared with another title, it was perfect as against these defendants. They held her possession. They had acquired it under her title." In Chiles v. Jones et al., 4 Dana., 479, Judge Ewing remarks, "It is the taking possession under another, that fixes the relation between them and estops the possessor and those who may come in under him, from contesting the title of him from whom he derives the possession.    *    *    *    The vendor could not treat the possessor as a trespasser, for he entered by his assent; neither can the possessor treat his possession thus acquired as adverse and hostile, but amicable and consistent with the title of the vendor and held under it."

In Kirk v. Nichol's heirs, 2 J. J. Marshall R., 369, Judge Robertson giving the opinion of the court, says, "It is an universal rule of law, as well as principle of justice and policy, that the possession shall be held according to the title under which it was acquired."    ( 2 Marshall, 243.)

" One who enters as tenant under a particular title, though he may acquire a better title, cannot avail himself of such better title against the title under which he has entered." (3 B. Monroe R., 619 ; Shackelford v. Smith, 3 Dana.)

" One cannot deny the seizin of him through whom he derived his title."    (Dashiel v. Collier, 4 J. J. Marsh, 601; 5 Ibid., 302; Rogers v. Waller, 4 Hey., 205; Wolden v. Bodley, 14 Peters, 156; Cruger v. Daniel, 1 McMullan, ch., 157; 6 Paige C. R., 526.)

It must be borne in mind that there was no attempt made by the defendant to show a renunciation of his possession under the title from plaintiff.    If this had been successfully done; if Laman had tendered back to his vendor Spier the title deeds by virtue of which he was permitted to go upon the land, released him from his covenants of warranty, and by a clear and unmistakable demonstration, notified him of his determination to renounce possession under him, and to hold the land adverse *in fact* to his title, and

then, under such adverse hostile possession, kept the land long enough to have been protected by the statute of limitation, he might have been heard to deny his vendor's title, but not otherwise.    Instead of this he quietly keeps the possession which appellant gave him, keeps the deeds under which he obtained that possession, and when he is sued for his trespasses on the remaining portion of the land, on the 20th day of January, 1857, he makes profert of these deeds, and sets up his rights under them; and so careful is he to preserve these valuable documents, that after he obtained his verdict in the court below, legalizing his pre-emption claim to 320 acres, he obtains a clause to be inserted in his judgment, giving him "leave to withdraw his certified copies of field notes, patents and title deeds."    It is submitted that he can not now, under this state of the case, be heard to stultify himself and deny the appellant's title.  (Wilson v. Watkins, 3 Peters' R.;  Ogden v. Walker, 6 Dana., 420.)

"If the defendant has acknowledged the title of the plaintiff, he can not afterwards dispute it."    (Hardy v. DeLeon, 5 Tex., 243; Guess v. Lubbock, Id. 546;  Portis v. Cumming, 14 Tex., 171.)

2.  A second reason urged why the appellee is not in a condition to claim any benefit from the saving clause in the legislative grant to appellant is, a pre-emption claim is not a right in contemplation of law, until after the issuance of the patent, or until after the three years residence on the land, claiming under the same, with the proof of settlement made and the pre-emption certificate obtained according to law.    (O. & W. Dig., 744, art. 347.)

3.  At the time the appellee commenced his pre-emption claim, by affidavit of settlement, and having the land surveyed under the same, the land was not subject to pre-emption, for there was a valid subsisting survey on it, and hence it was not vacant in contemplation of the law under which the pre-emption claim was prosecuted.    (O. & W. Dig., p. 743, art. 339.)

*Chandler & Turner*, for appellee.

MOORE, J.—The right of the appellee Laman to acquire three hundred and twenty acres of land as a pre-emptor, by virtue of

Spier v. Laman.

his settlement in 1853, and subsequent affidavit and survey, has been fully established by a former decision of this court. (Jennings v. De Cordova, 20 Tex., 512.) We see no reason to question the correctness of that decision. The point is, consequently, not regarded as a matter for discussion.

The fact of Laman having purchased under Spier's title, did not preclude him, when he ascertained that this title was worthless, and that the land was a part of the public domain, from claiming a pre-emption upon it. He, certainly, was entitled to the same privilege with all other citizens, to appropriate this, or any other part of the public lands of the State, in the manner prescribed by law. Spier, at that time, had neither a legal nor equitable interest in the land. The assertion, by Laman, of a pre-emption claim upon the land, by virtue of his settlement, worked no injury to Spier, and deprived him of no right. Nor was Laman precluded from claiming his pre-emption, by reason of his entry upon it as a purchaser, under the void title by which it was then claimed. When he learned the facts respecting it, he was entitled to assert the privilege conferred upon him by law, by reason of his settlement upon vacant public domain. His previous ignorance of the nature of the title did not estop him from doing so. (Cravens v. Brooke, 17 Tex., 268; Jennings v. De Cordova, *supra.*)

The affidavit by Laman, that he believed the land was vacant, was a substantial compliance with the law. It was not the object of the first section of the pre-emption law of 1845 to prevent settlements upon lands that may, at any time, have been located or surveyed "by virtue of some genuine, legal and valid certificate, or other evidence of title," although the land could be no longer held or claimed under such location or survey. Although initiatory steps had been taken to appropriate the land by virtue of some genuine claim, if the purpose of doing so had been abandoned, and the land had returned to the mass of the public domain, it was equally subject to appropriation by a settlement and improvement, as by the location of a certificate.

The original equitable title which Spier had to the land, had been long lost by his failure to comply with the requisitions of the law for the perfection of his title. The laws authorizing him to do so

had been repealed, or had expired by their own limitation. He could assert neither a legal nor equitable claim to the land at the time Laman settled upon it; and he can only now claim it by reason of the legislative grant. This is the only title upon which he can rely; and he must hold under it subject to the qualifications and limitations with which the legislature saw fit to qualify their bounty. Outside of this, he can assert no claim to the land whatever. The act of the legislature, however, expressly declares, that it "shall not interfere with the rights of third persons." Did Laman, by virtue of his settlement, affidavit and pre-emption survey have any rights? If so, the law did not affect them, and the title conferred by it can not be invoked against him. If it were conceded that Spier had a dormant equity of an older date and superior merit to that of Laman, it would place him in no better position. The court is not authorized to canvass the merits of conflicting equities. The act of the legislature brings the whole matter to the single issue, whether Laman had any rights which attached to the land at the date of its enactment. The bare statement of the proposition shows that the question is too plain for argument. The settlement upon and improvement of vacant land, together with the affidavit and survey, severs the land from the general mass of the public domain, and gives the settler an equitable, though defeasible title to it. He acquires thereby a right of possession which, unless he fails to comply with the terms of the law, ripens into a perfect legal title. He has such an interest or right as, upon his death, will descend to his widow and heirs; or, that he may sell and convey, subject, of course, to the performance, by the purchaser, of the conditions upon which the title is held.

There is no error in the judgment, and it is, therefore, affirmed.

Judgment affirmed.