## J. N. RODGERS V. DANIEL DAILY.

1. VENDOR AND VENDEE—PRE-EMPTION.—One who has entered upon the vacant public domain, as a purchaser from another who assumed to have title, may, on discovering that the land is vacant, repudiate the executory contract for its purchase, without quitting possession, resist the payment of the notes given for the purchase-money, and while in possession, if entitled to pre-empt land, may take steps to secure it as a purchaser.

2. DESCRIPTION, UNCERTAINTY OF—FAILURE OF CONSIDERATION.— A bond for title was executed to three hundred and seventeen acres of land, described as "the same upon which he (the purchaser) now resides," and being further described as a part of the O. M. Vinton league. It was afterwards ascertained that neither the house or improvement of the purchaser were on the Vinton league. In a suit by the vendor to collect the purchase-money: *Held*, There being no other description by which the uncertainty could be remedied, and the shape or locality of the three hundred and seventeen acres ascertained, the collection of the purchase-money note could not be enforced on account of failure of consideration.

APPEAL from Houston. Tried below before the Hon. A. T. McKenney, special judge.

This suit was brought in 1869 by Daniel Daily, against J. N. Rodgers, to recover the value of nine thousand pounds of seed cotton, which Rodgers, by his obligation of date October 24, 1868, promised to deliver "in good condition at the gin-house of said Daily, in Houston county, on or before the 1st

day of December, A. D. 1869, in part payment of three hundred and seventeen acres of land, part of the headright of Oliver Mills Vinton, situate in the counties of Houston and Trinity." The petition alleges a failure to deliver and prays for a judgment for the value of the cotton.

The defendant pleaded a failure of consideration, alleged fraud on the part of Daily, and prayed for a judgment to recover back money paid to Daily on the contract of purchase.

In 1858, Daily contracted to sell to Rodgers two hundred and thirty-eight acres of the T. Robbins survey, in Houston county, which he (Daily) claimed to own, but for which he had not obtained the patent. The war coming on, Rodgers did not finish paying for the land, but did pay some $230. Daily claimed that in August, A. D. 1868, the Commissioner of the General Land Office assured him that the Rodgers land was within the limits of the O. M. Vinton league, which, also, Daily claimed to own, but had not a patent for. At that time, August, 1868, Daily lifted the Robbins certificate from this land and located it in Jack County. On the 24th of October, A. D. 1868, Daily and Rodgers rescinded the first contract and made a new one, by which Daily contracted, by title bond, to make Rodgers a good title to three hundred and seventeen acres of the Vinton league, embracing "same land on which Rodgers was then living," and had occupied as his homestead with his family since 1858, and which he has occupied, continuously, to the time of the trial. For this land, Rodgers excuted to Daily his three promissory notes, for nine thousand pounds of seed cotton, each, and due, respectively, on the 25th of December, 1869, 1870, and 1871. The land was wild when Rodgers went on it, and he made all the improvements on it, amounting to forty acres of improved land, and other improvements to the value of $1,000. Before the first note became due, Rodgers ascertained that Daily had no title to the land, and when it matured, refused to pay it. Daily thereupon threatened to attach Rodgers's crop of cotton, if he failed to pay; and, upon Rodgers's refusal, sued out an attach-

ment, and levied it upon ten thousand pounds of seed cotton of Rodgers's crop, valued at $500. In order to get security on his replevy bond, Rodgers was compelled to turn this over to his securities. In this suit, Daily also asked to have his vendor's lien enforced. This suit was first tried at March Term, District Court of Houston county, for the year 1871, with a verdict for Rodgers, but owing to some errors, a new trial was granted. An order was issued by the court, at that term, to the county surveyor, to run out the lines of the Vinton league, to see if the land bargained for was situate on that league. A few days thereafter, viz, April 17, 1871, Daily located upon the land the Ross M. Bridge's certificate, Rodgers still on the land. In the early part of July, 1871, the county surveyor ran out the Vinton league, and ascertained that the Rodgers land was vacant public domain, as also two tracts which Daily had rented to John Terry and Stanley Watson, which adjoined Rodgers's land.

The surveyor informed Rodgers, Terry, and Watson that they could file a pre-emption claim of one hundred and sixty acres each, as heads of families, on the land upon which they lived, under the pre-emption law of August 12, 1870, by making application to him and having their claims surveyed. In a few days thereafter, July 18, A. D. 1871, Rodgers, Terry, and Watson made application to the surveyor to have their homesteads surveyed. The county surveyor promised Rodgers to survey the land for him in a few days, but failed to do so. He put Rodgers off with promises for several months, and finally refused to survey at all, because, he said, Daily would sue him if he did. Thereupon Rodgers applied for a *mandamas* against him. It appears that Rodgers's, Terry's, and Watson's pre-emptions cover the same land that Daily sold Rodgers, and more.

This case was tried, a second time, at the December Term, A. D. 1873, and, under the rulings of the court, verdict and judgment were given for plaintiff Daily. The defendant

Rodgers appealed, and assigned many errors, which, in view of the opinion, it is not necessary to specify.

*Moore & Spence,* for appellant.

*Nunn & Williams,* for appellee.—We contend that the appellant, having bought the land with full notice of its condition, and never having been evicted or disturbed in his possession, and Daily being able, ready, and willing to make title, as required by his bond, he cannot refuse to pay the purchase-money, as stipulated in his engagement. (Tison *v.* Smith, 8 Tex., 148; Brock *v.* Southwick, 10 Tex., 68; Cooper *v.* Singleton, 19 Tex., 260; Johnson *v.* Long, 27 Tex., 22; Sugden on Vendors, 306, notes 345–347.)

"The rule is well established that, where a party in whose favor something is to be done, in consideration of his promise to pay a certain sum of money to another, prevents that performance, and the other is not in default, the money may be recovered as if the act had been performed;" and in support of this doctrine, we cite Kennedy *v.* Kennedy, 2 Bibb., 464; Marshall *v.* Craig, 1 Bibb., 389, 390.

It is believed that, in all cases that may be invoked to support the appellant's claim as a pre-emptor, the conditions of the pre-emption grant will be shown to have been fully complied with; and further, that no actual possession, with improvements, have passed.

The fees were not tendered in this case till July, 1872. To have perfected a pre-emption right, it being otherwise unobjectionable, the selection and survey should have been made prior to August, 1871, and field-notes returned. It is not conceived that anything short of doing all that was needful to subject the surveyor to the demand to make the survey, and to *mandamus,* if need be, would have been a compliance with the law. (Glasscock *v.* The Commissioner, 3 Tex., 53; Marshall *v.* Clark, 22 Tex., 31, 32; Winder *v.* Williams, 23 Tex., 603, 604.)

And it is further submitted, that, if the surveyor, for any cause, failed or refused to make the survey, a proper demand having been made, and he being therefore legally bound so to do, then it was incumbent upon the applicant to apply to the courts for *mandamus* to compel the surveyor to perform a duty within the time allowed him by law to make this claim. (Teell *v.* Huffman, 21 Tex., 782.)

Failing in this, it is conceived that the party seeking the survey has so far acquiesced as to become responsible for the failure to do what the law expressly enjoins as the condition of the State's bounty.

He has not surveyed the land and returned the field-notes within twelve months, as required by law. He has not paid or tendered the surveyor his fees, nor has he, within twelve months, taken *mandamus* against the surveyor, to compel him to do what is so needful to the pre-emption right. Can he, at a subsequent time, do these things, and thereby acquire rights which have already been forfeited, (if they ever existed,) and this, too, having the effect to divest Daily of legal rights duly acquired?

ROBERTS, CHIEF JUSTICE.—The trade between the parties for a tract of land of 238 acres, identified by metes and bounds, being part of the land upon which the Thomas Robbins's certificate was located by Daily, being cancelled, it is unnecessary to make any further reference to it.

After it was cancelled, the Robbins's certificate having been previously lifted and located elsewhere, the land was vacant public land, and the obligation sued on, which was given for 317 acres, on which said Rodgers resided, was without consideration. Nor are there any facts shown in the record, which, by reflection back upon the transaction, could make it a valid cause of action; for Daily had no title to the land when the obligation was given, nor when the suit was brought. And by the evidence of Cundiff, his own witness, and the chain of title from Ross M. Bridges, adduced in evidence, it

appeared at the trial that he had still acquired no complete title. There was no proof that Matilda Bridges and Mary Freeman were the widow and heir of Ross M. Bridges, and if that had been proved, the papers adduced showed that Daily and Cundiff owned the land, and not Daily alone.

Giving a bond for title was an implied assumption that he had, at the time of the sale, some sort of title, that either was perfect, or might be perfected, or made valid. That entered into the consideration of the obligation for the cotton.

Rodgers, upon finding that the land was entirely vacant, had a right to repudiate the executory contract in relation to the purchaser of it. (Green *v.* Chandler, 25 Tex., 155.) Being public land, and Daily having no sort of claim to it, either at the sale or at the bringing of the suit, Rodgers was not bound to surrender or abandon the possession of the land, but might take steps to appropriate, by pre-emption, one hundred and sixty acres of it as a homestead, under the law of 1870. (Paschal's Dig., arts. 7045, 7048; Wheeler *v.* Styles, 28 Tex., 240; Spier *v.* Laman, 27 Tex., 205; Jennings *v.* De Cordova, 20 Tex., 515; Cravens *v.* Brooke, 17 Tex., 273; Pain *v.* Miller, 35 Tex., 79.)

The bond from Daily to Rodgers does not describe and identify any particular 317 acres of land, further than being "the same upon which Rodgers now resides," and being on the O. M. Vinton league. Upon a survey being made, it was found that Rodgers's house and improvements were not on the Vinton league; and there were no metes and bounds, or other objects specified in the bond, by which the shape or exact locality of the 317 acres of the land could have been ascertained. This uncertainty was not attempted to be aided by any extrinsic evidence in the record, if it were practicable to have cured so palpable a defect in the bond, so as to make it a valuable consideration for a promise to pay the cotton on the part of Rodgers.

This being a suit upon an obligation for cotton, brought by Daily against Rodgers, and Daily having shown by the

allegations of his own pleadings, and by the evidence adduced by him on the trial, that the cause of action set forth in his original petition is not a valid one, the verdict and judgment in his favor is erroneous, and must be set aside, irrespective of whether or not Rodgers has acquired any right to the land by his pre-emption claim. It is therefore, in this suit, unnecessary to consider the numerous questions arising upon the charge of the court, the charges refused, the bills of exceptions, and other matters presented in the assignment of errors.

It is not perceived how the cause of action in the original petition can be maintained by any amendment, consistent with the allegations of the amendments that were made, showing that the land for which the obligation was given was entirely vacant and public domain, both when the sale was made and when the suit was brought. Who, now, has the better right to the land, is not the question in this suit. That must be settled in another suit, unless the parties can amicably adjust their respective claims to it.

Because the plaintiff below has failed to show a good cause of action, either in his pleadings or in his evidence, the judgment is reversed, and the cause is remanded.

REVERSED AND REMANDED.