RUSSELL HOWARD v. JUSTINE McKENZIE ET AL.

(Case No. 484-4017.)

1. PRACTICE — PARTIES. — Where the plaintiff in an action dies, an alleged assignee cannot, over the objection of the defendant, come in and prosecute the suit, until the legal representatives or heirs of the deceased have had an opportunity to admit or contest his right. If, however, the defendant acquiesces in such a procedure, he may be precluded from subsequently objecting.

2. CASE APPROVED.— Moore v. Rice, 51 Tex., 290, approved.

3. PARTIES — ESTOPPEL.— The fact that a defendant asked to have the administratrix of a deceased plaintiff made a party, and also that a third party claiming an interest be also made a party plaintiff, will not preclude him from objecting in time to the action of the court in permitting the cause to proceed to judgment with such third party substituted for the administratrix.

4. PARTIES — WAIVER.— A defendant asked that the administratrix of an estate claiming an adverse interest, and who had succeeded a former administrator who had been plaintiff, be made a plaintiff, and that *scire facias* issue to make a third party claiming the interest of the estate a plaintiff. The third party appeared and pleaded, claiming the interest of the estate; the administratrix did not appear. The third party procured a change of venue, and two years afterwards, for the first time, the defendant, on the eve of trial, objected to proceeding with the cause, on account of the fact that the administratrix had not been made a party. *Held*, that the objection came too late.

5. PARTIES — PRACTICE.— A purchaser of land after his vendor had prepared a petition in a suit to recover it, but before the filing of the petition, is not a purchaser *pendente lite;* he cannot make himself a party plaintiff in the suit on the death of his vendor until the heirs or legal representatives of the original plaintiff are first made parties.

6. CASE APPROVED.— McMullen v. Hodge, 5 Tex., 34, approved.

7. FACT CASE — VENDOR AND VENDEE.— See opinion for facts qualifying the application of the rule that a vendee under an executory contract cannot dispute the title of his vendor or his assigns.

8. LIMITATION.— The possession of the vendee under an executory contract may become so far adverse that he may acquire a title by limitation.

9. VENDOR AND VENDEE — PURCHASER.— The doctrine heretofore announced in favor of a pre-emptor, that after discovering that land purchased by him is vacant, he is not bound to surrender or abandon the possession, but may take steps to pre-empt it, extended so as to authorize the vendee to secure it by locating a certificate.

10. EVIDENCE.— The declarations of a vendor affecting his title are not admissible against the purchaser, when made before the execution of the lien to satisfy which the sale was made, under which the purchaser claimed title.

11. STATUTE CONSTRUED.— It was not the design of the statute, authorizing the cancellation of a patent (Pasch. Dig., art. 4301), to give any effect to such cancellation if procured by any other than the owner of the land patented.

12. FACT CASE.— See statement for affidavit sufficient to authorize the

introduction in evidence of certified copies of patents from the general land office.

13. EXECUTION.— See statement of case, and 22 Tex., 479, for circumstances under which an execution was properly admitted in evidence, which originally issued to a different county from the one in which the judgment was rendered, but to the one in which the suit originated, and from which the venue had been changed.

14. VOID AND VOIDABLE — PARTITION — COLLATERAL PROCEEDING.— A judgment rendered by a court of competent jurisdiction, partitioning real estate, was objected to in a collateral proceeding, because it appeared from evidence *aliunde* that one of two partners, between whom and another party the partition was made, was dead when the judgment was rendered; *held*, that the judgment was properly admitted in evidence, the record showing an acquiescence of all parties in interest, and the objection being raised by one not interested under the partition.

15. A motion for rehearing in the supreme court, if one of several opposing parties to the proceeding is not represented by counsel, should state the name and residence of the party, that a copy of the motion may be served on him; and in such case, where no service is sought or obtained, the motion will not be entertained.

ERROR from Bexar. Tried below before the Hon. Geo. H. Noonan.

In addition to the history of the case stated in the opinion, and as explanatory of the facts on which the several conclusions in the latter portion of the opinion are based, it may be stated:

1. That certified copies of two patents to Castro and Flores, covering the league and labor of land, were admitted, being certified copies from the records of Medina county. This was allowed on affidavit of McLean that the original patents had never been in his possession or under his control, and that he was unable to procure the possession of the same; that he had made diligent inquiry and search for them where they should have been deposited, and had been unable to procure them.

2. Defendant objected to the introduction in evidence of an original execution from Bexar county to Medina county. The suit was originally brought in Medina county, and the venue changed to Bexar.

3. The plaintiff in error objected to the admission of the record of the probate court of Galveston county, showing partition between the estate of John H. Illies, deceased, and I. A. and G. W. Paschal, the objection being that I. A. Paschal was dead at the time of the petition, but it did not appear that his death was shown by the record of that proceeding.

*Howard & Harrison,* for plaintiff in error.

I. On the death of parties to a suit pending, their place must be supplied by the appearance of, or citation to, their legal personal representatives, and not by a voluntary substitution of other parties foreign to the record. Act of 1866, R. S., 1246–1250; Alexander *v.* Barfield, 6 Tex., 400; Lee *v.* Salinas, 15 Tex., 497; Hearn *v.* Erhard, 33 Tex., 66; Carter *v.* Reynolds, 6 Tex., 567; Smith *v.* McGaughey, 13 Tex., 466; Bradford *v.* Hamilton, 7 Tex., 57; Henderson *v.* Kisson, 8 Tex., 46; Cain *v.* Haas, 18 Tex., 624; Rider *v.* Duval, 28 Tex., 624.

II. A sale *pendente lite,* if valid at all, is made subject to the suit, which must still go on in the names of the original parties and their legal personal representatives, and gives the parties purchasing no right to come in at all, much less to substitute themselves for the said parties. Rogers *v.* Green, 35 Tex., 735; Buford *v.* Rosenfield, 37 Tex., 46.

III. A new, distinct and repugnant cause of action was set up and joined with the first cause of action, and that without the payment of costs or abandonment of the first action, which is not authorized by law. Beal *v.* Alexander, 6 Tex., 531; Carter *v.* Reynolds, 6 Tex., 567; Gov'r *v.* Burnett, 27 Tex., 37; Smith *v.* McGaughey, 13 Tex., 464; Henderson *v.* Kisson, 8 Tex., 46; Snead *v.* McCoull, 12 How., 407; Schofield *v.* Fitzhugh, 1 Cr. C. C., 108; Tenbroeck *v.* Pendleton, 5 Cr. C. C., 464.

IV. The action of the commissioner cannot be attacked

collaterally. If the act of the commissioner in cancelling the patent was ministerial, and was erroneous, he should have been applied to for its correction, and refusing, a *mandamus* would lie. If his act was one of discretion, confided to him, as we contend, it is not subject to revision. Commissioner *v.* Smith, 5 Tex., 478; Arberry *v.* Beavers, 6 Tex., 466; R. R. Co. *v.* Randolph, 24 Tex., 343; Duer *v.* Police Court, 34 Tex., 284; Wells *v.* Mills, 22 Tex., 304; Durrett *v.* Crosby, 28 Tex., 694; Bledsoe *v.* Int. R. R. Co., 40 Tex., 537; Kuechler *v.* Wright, 40 Tex., 600; R. R. Co. *v.* Gross, 47 Tex., 428.

V. Plaintiffs offered in evidence on the trial the execution in the case of Illies *v.* Castro. Defendant objected because the same was an original execution issued from Bexar to Medina county on a conditional order or decree, and no original had first been issued to Bexar county, and no judicial ascertainment as to the condition had been previously had.

VI. Plaintiffs offered in evidence on the trial a certified copy of a deed from the administrator of J. H. Illies to E. F. Moser. Defendant objected that the affidavit of the loss of the original was insufficient in its averments to authorize the admission of the copy. The loss of the original was not accounted for, as the law requires. Ury *v.* Houston, 36 Tex., 268.

VII. Plaintiffs offered in evidence on the trial a certified copy of a portion of the record of the probate court of Galveston county, in the estate of John H. Illies, deceased, showing partition between the estate of said Illies and I. A. and G. W. Paschal, to which defendant objected, for that I. A. Paschal was dead at the time said partition was made, he having died on the 22d day of February, 1868, and the representative of said I. A. Paschal had never been made a party to said proceedings so as to authorize the probate court of Galveston county to render such a judgment. This was error; the court had no jurisdiction of the parties.

VIII. A vendee under an executory contract cannot dispute the title of his vendor or his assignees. Tyler on Eject., pp. 924, 925; 2 Greenl. Ev., sec. 307; 2 Stark. Ev., 424; Adams on Eject., 56, note 1; Jackson v. Ayres, 14 Johns., 224; Jackson v. Hardee, 4 Johns., 202; Jackson v. Bond, 4 Johns., 230; Jackson v. Walker, 7 Cow., 637; Rodgers v. Daily, 46 Tex.; 578.

IX. If the vendee sets up an adverse claim, there must be notice to the vendor; otherwise any title acquired by him inures to the benefit of the vendor. Tyler on Eject., p. 861; Lewis v. Boskins, 27 Ark., 61; Peay v. Capps, 27 Ark., 160; Hart v. Bostwick, 14 Fla., 162; Williams v. Watkins, 3 Pet., 43; Waldin v. Bodley, 14 Pet., 156; Camley v. Stanfield, 10 Tex., 551. Or, disputing his vendor's title, the possession must be returned. Demorest v. Bennett, 29 Tex., 262; Smith v. Nolen, 21 Tex., 496; Cooper v. Singleton, 19 Tex., 267; McGudoc v. Mormon, 26 Wis., 588; Owens v. Rector, 44 Mo., 389; Peyton v. Stith, 5 Pet., 485.

X. If a purchaser (either at public or private sale) have notice of an existing title or equity, he is not an innocent purchaser. The purchaser under the Castro and Illies execution had notice of McMullen's title. Ayres v. Duprey, 27 Tex., 600; Mullins v. Wimbleby, 50 Tex., 457; Mann v. Falcon, 27 Tex., 275. *Lis pendens* is notice. Board v. T. & P. R. R. Co., 46 Tex., 316; Briscoe v. Bronaugh, 1 Tex., 333. The fact shown was notice. McAnnelly v. Chapman, 18 Tex., 199; Wethered v. Boone, 17 Tex., 150; Boone v. Wethered, 20 Tex., 676.

*Waelder & Upson,* for defendants in error.

GOULD, ASSOCIATE JUSTICE.— The plaintiff in error complains in his first, second and fourth assignments of error of the action of the court in allowing the substition of new parties instead of original parties, deceased, and of a new equitable course of action, instead of common law

causes of action originally sued upon. The questions thus presented can only be understood by giving a history of the pleadings of the three cases which were consolidated and tried together. Much of this history is taken from the brief of counsel for defendants in error.

On the 2d day of November, 1869, W. D. Mays, administrator of the estate of I. A. Paschal, deceased, filed his petition in the district court of Medina county against Volney E. Howard and the unknown heirs of B. D. Howard, claiming a number of lots in Castroville, Medina county (the same which are in this suit adjudged to McLane), setting forth that the heirs of B. D. Howard claim to have a pretended and fraudulent right or title to the same, and praying that the title thereto may be decreed to be in petitioner's intestate. This case was numbered 307.

On the 11th day of April, 1870, Matthew Malsh, George W. Paschal and William D. Mays, administrator of the estate of Isaiah A. Paschal, deceased, filed their petition in the district court of Medina county, against Russell Howard and others, in trespass to try title, claiming ownership of what is known as the Castroville league of land, except such fractional part of said league and such lots as may have been sold to others by John H. Illies in his lifetime. This suit was numbered 311 on the docket of Medina county district court.

By disclaimer of the other defendants, Russell Howard became the sole defendant, and on November 26, 1870, filed his answer suggesting the consolidation of the two cases, claiming title under John McMullen, deceased, alleging that his title had been declared good by the circuit court of the United States, and alleging that "Henry Castro, now deceased, was the tenant of John McMullen" under an executory contract not complied with by either party.

On the 1st day of December, 1870, Howard represented

to the court that "there are certain assignees of the parties plaintiffs whose interest, if any, rest upon the same right as the parties plaintiffs" in the two cases, 307 and 311, "and he therefore asks leave to amend and make them parties."

On the same day the above motion was granted by the court.

On the 21st day of January, 1871, Russell Howard filed his suit, No. 322, in the district court of Medina county against Joseph Courand, Charles Brinkhoff, Eliza Moser, P. H. Moser, Julius Kauffman and Matthew Malsh, claiming to be the owner of certain lots in the town of Castroville, and "of what is known as the McMullen grant," charging that some of defendants claim the lots, and Malsh, or others, certain specified surveys on the McMullen grant; asking to be quieted in his title. On March 21, 1871, Nos. 307 and 322 were, on motion of Howard, consolidated with No. 311. After a number of continuances of the consolidated cause by consent, on the 6th of October, 1874, Russell Howard filed the following:

"And now comes Russell Howard, who says, that at a previous term of the honorable court, W. D. Mays was suggested by the defendant to be no longer the administrator of I. A. Paschal, deceased, and he now says that Mary C. Paschal, of the county of Bexar in said state, is the widow and administratrix of said Isaiah A. Paschal, deceased, and that since said suggestion of said removal of said William D. Mays, now deceased, Hiram H. McLane (as appears of record in this county of Medina) has become the purchaser of nearly all of the interest of said estate. Wherefore said Howard asks that said McLane, a resident of said Bexar county, together with said Mary C. Paschal, administratrix as aforesaid, be made parties plaintiff hereto, and a writ of *scire facias* to revive and prosecute this suit in their names be issued accordingly to each."

On February 9, 1875, H. H. McLane, by leave of court, filed his plea, claiming under an administration sale and deed from Mary C. Paschal, administratrix of I. A. Paschal, deceased, and under a sale and deed by the trustee in a deed of trust made by I. A. and Geo. W. Paschal, to be the owner of the entire interest formerly owned and claimed by I. A. and G. W. Paschal, and seeking to prosecute and defend as they had done.

On February 11, 1875, on motion of McLane, supported by affidavits, the venue was changed to Bexar county. On March 1, 1875, Russell Howard, for himself and the other defendants, filed in the district court of Bexar county a general demurrer and general denial, entitled and numbered as 311.

On June 12, 1877, Howard filed a paper in which he suggests the death of Mays and of Malsh, and states that Geo. W. Paschal is the only survivor of the plaintiffs in No. 311; that H. H. McLane was improvidently permitted to make himself a party plaintiff and defendant. He then proceeds to demur specially to the petition and the pleading of McLane in No. 311 for uncertainty and other defects, and then by way of cross bill, as well as by way of answer, states at length the grounds of his claim of title. He claims that McMullen, under whom he claimed, held and possessed the land in 1834, and afterwards under a valid grant to the Indians of the Mission of San Jose by the government of Spain in 1766; that Castro went into possession in 1844, as before stated, under recorded executory contracts with McMullen; always acknowledged McMullen's title, and located the N. Flores certificate on the Castroville league, and obtained a patent thereon in 1850, solely as a defensive measure against parties denying the validity of the grant to the Indians, and not by way of an adverse claim to McMullen. He alleges that on February 24, 1868, these patents were cancelled and the Flores certificate delivered up for relocation, and had

been patented on other lands. He further sets up that the adverse claim was under a purchase at execution sale of Castro's interest, in 1853, one Illies being the purchaser, and charges notice to him and those claiming under him that Castro claimed only under, and not adversely to, McMullen. The answer and cross bill contain references to sundry exhibits, not appearing in the record as such, and embraces sundry other matters, including proceedings in the district and supreme court of the United States in a suit between the heirs of B. D. Howard on the one side and Herndon and Maverick on the other.

On the 12th of June, 1877, the several parties who are usually styled plaintiffs, and who are the defendants in error here, filed pleadings to the following effect:

1. Mrs. Justine McKenzie, a *feme sole*, says that she is the owner of all the interest, right and claim of Matthew Malsh; that said Malsh has died since the institution of these suits, and she prays to make herself a party in the place and stead of said Malsh, and asks to prosecute and defend in the said suits the same as said Malsh might or could do if living.

And therefore said Justine McKenzie, as plaintiff in case No. 311, in place of Malsh, and also P. H. Moser, Eliza F. Moser, Charles Brinkhoff, Michael Lang and Joseph Courand, as well as the said Justine McKenzie, as defendants in suit No. 322, the said Lang making himself a party, claiming an interest in the property in controversy, in connection with the said P. H. Moser and Charles Brinkhoff, with leave of the court first had and obtained, set up ownership to the property in controversy; the said Mrs. McKenzie claiming that she is the owner of all those parts of surveys No. 178 and 179 (the two constituting the Castroville league) which have not been subdivided into lots, blocks and ranges, and that she is also the owner of a number of the lots, as subdivided, which lots are enumerated in said "amended petition."

P. H. Moser, Charles Brinkhoff and Michael Lang allege themselves to be the joint owners of a large number of lots, which are also enumerated in the amended petition.

Eliza F. Moser alleges herself to be the owner of three lots, and Joseph Courand to be the owner of one lot.

All of said last named parties, in answer to the petition of said Russell Howard in suit No. 322, make a general denial, plead not guilty, and allege themselves to be the owners respectively of the lots previously enumerated, and the said Justine McKenzie also claiming the five surveys claimed by Howard in his petition in suit No. 322. And all of said parties together and each plead, as matters of defense and in support of their titles, the statutes of limitations of three, five and ten years, and that their claim and possession for twenty years prior to the institution of the suits aforesaid gives them title by presumption.

They further deny the statements and allegations contained in the answer of Russell Howard, dated 21st April, 1877; specifically deny the cancellation of the patents issued to Henry Castro on August 27, 1850; that if any such cancellation was made or attempted to be made, the same is, and was at the time thereof, null and void; that it was not procured by any one who was either the owner of the patents or the lands thereby granted, and that the cancellation, if obtained, is in fraud of the rights of the above named parties, and void in so far as they are concerned; that said patents were never cancelled by any one having authority to make such cancellation.

They also deny the validity of the McMullen grant by reason of the judgment of the district court of Bexar county in 1847, which was affirmed by the supreme court of the state.

They further deny that the decree of the circuit court

of the United States in the chancery case aforesaid has any effect upon them, for the reason that said decree was not rendered upon the trial of the title, but was by default, and only against parties who have no connection with these parties; that these parties do not hold or claim under, and that there is no privity between them and the parties to said chancery suit. They thereupon pray judgment in their favor, and that they may be quieted in their title. H. H. McLane adopts these pleadings as his own.

On the same day, June 12, 1877, Howard files his motion to strike from the files those pleadings that day filed, because "filed by new parties not the legal representatives of the original plaintiffs, Mays and Malsh, deceased, George W. Paschal, the other original plaintiff, being still alive," and amongst other grounds, claiming that these pleadings set out a new and inconsistent cause of action. On the same day was also filed an agreement, signed by counsel for Howard and by counsel for all the defendants in error, but by no one professing to represent George W. Paschal, or the estates of either I. A. Paschal or of Malsh, reciting the disqualification of the presiding judge, and selecting a special judge to try the case.

At the same term the case was tried without a jury, and the court (having, as appears by bill of exceptions, overruled Howard's demurrer and motion to strike out) proceeded to give judgment against Howard in favor of the different defendants in error, viz.: that Justine McKenzie recover certain lots specified; that P. H. Moser, Charles Brinkhoff and Michael Lang recover of said Howard certain other lots; and so respectively of Eliza Moser, Joseph Courand and Hiram H. McLane each, giving them a writ of possession and quieting their title. It was ordered and decreed that Howard take nothing by his suit No. 322, and judgment was given against him for costs.

Plaintiff in error, Howard, in his first assignment complains of the substitution of parties; in his second, of the substitution of a new and repugnant cause of action; and in his fourth, of the refusal to grant his motion to strike out. The first two assignments do not apply to P. H. Moser, Charles Brinkhoff, Eliza F. Moser or Joseph Courand, who were not plaintiffs in Nos. 307 or 311, but were brought into the suit as defendants in No. 322 by Howard. There was no substitution of parties or of causes of action by them. In their answer they avail themselves of their right to seek affirmative relief; but they presented no issues which made it necessary that the estates of Paschal and Malsh should be represented. If an error was committed, it was not one for which they were responsible. That other parties had come in irregularly was no sufficient reason for striking out their pleas.

The plaintiff in error's first proposition is: "On the death of parties to a suit pending, their place must be supplied by the appearance of, or citation to, their legal personal representatives, and not by a voluntary substitution of other parties foreign to the record."

This subject was examined with care in the case of Moore v. Rice, 51 Tex., 290, and the conclusion was substantially as expressed in the above proposition. In case of the death of the plaintiff, an alleged assignee cannot, over the objection of the defendant, come in and prosecute the suit until the representatives or heirs of the deceased have had an opportunity to admit or contest his right. If, however, the defendant acquiesces in such a procedure, he may be precluded from subsequently objecting. Seeking to avail themselves of this principle, counsel for defendants in error submit their counter proposition: "Howard himself having moved, in the district court, in cases 307 and 311, that other parties might be made, who are assignees of the plaintiffs in said suits, he cannot now object to the coming in of such parties voluntarily."

In regard to McLane they further say: "Howard having filed his application for a *scire facias* to make McLane a party, he (Howard) cannot now object to McLane's having become a party."

In the same paper, however, he asked to have the administratrix of I. A. Paschal's estate made a party, and cannot therefore be said to have then acquiesced in the substitution of McLane for the Paschals.

Subsequently, however, he allows McLane to come in, avowedly as the owner of the interest of the Paschals, and to prosecute the suit himself. McLane not only files his plea asserting his right to prosecute the suit instead of the Paschals, but proceeds to have the venue changed, and all this, so far as the record shows, is done without objection. Over two years afterwards, and just on the eve of the trial, he does object, but we think the objection came too late. He had admitted in his application for *scire facias* in 1874, that McLane had become "the purchaser of nearly all of the interest" of I. A. Paschal's estate, and now, even when making the objection, he treats McLane as competent by his counsel to agree to a special judge.

The record shows that in 1873 McLane purchased at administration sale the interest of I. A. Paschal's estate in these lots and lands, and at trustee's sale the interest of G. W. Paschal. From the statements in his application for *scire facias* in 1874, and from his whole course up to June, 1877, it is reasonable to conclude that, up to the latter period, Howard had acquiesced in McLane becoming a party, not merely as interested in the subject matter of litigation, but as the assignee of the Paschals.

In regard to Mrs. McKenzie and Lang, defendants in error say that their interests were acquired before the institution of the suits, and that they had a right to become parties as intervenors for the purpose of "ascertaining and protecting their interests." Graves *v.* Hall, 27 Tex. It seems that Lang, jointly with Moser and

Brinkhoff, purchased at the administration sale of the estate of Illies in 1869, and as he came in asserting only that right, he was properly admitted.

But Mrs. McKenzie comes in stating that Malsh was dead, and makes herself a party in his stead. Although it seems that Malsh, who bought from a purchaser at the administration sale of Illies' estate, had actually conveyed his interest to Mrs. McKenzie before the petition in No. 311 was filed, but after it was drawn up, and that Mrs. McKenzie was not in fact a purchaser *pendente lite*, this does not authorize her, without the consent of Malsh's representatives and without the acquiescence of Howard, to prosecute the suit " as Malsh might or could do if living." Her effort to do so was promptly objected to, and in our opinion the objection should have been sustained. The defendant could not be compelled to litigate with her as the representative of Malsh, unless the heirs or representatives of Malsh were first made parties, and the defendant thus assured that he was litigating with the right person.

This conclusion will lead to a reversal of the judgment in so far as it is in favor of Justine McKenzie; but as the judgment, or rather decree, consists of distinct and independent parts, and may still, if found correct as to other defendants in error, be affirmed as to them, we proceed to examine the other errors assigned, but in doing so propose to group them and treat them in our own order.

The plaintiff in error adduced in evidence a certified copy and translation of the Spanish grant to the Indians of the Mission of San Jose, and asserts in his brief that it " is a valid grant, and is so declared in the decree affirmed by the United States supreme court in Herndon *v.* Howard's Heirs." That instrument was passed upon by this court in the case of McMullen *v.* Hodge, 5 Tex., 34, and it was held not to vest the title, but only to give a usufructuary right, which ceased with the extinguish-

ment of the mission.   See Trevino *v.* Hernandez, 13 Tex., 653, where the case of McMullen *v.* Hodge was commented on, and, notwithstanding the mistakes of translation alluded to by counsel, the conclusion as to the invalidity of the instrument to pass title was substantially re-affirmed.   An examination of the case in the supreme court of the United States referred to (found in 18 Wall., p. 99), shows that in that court, and as far as can be seen in the court below, the question presented was, not as to the validity of the grant, but as to the sufficiency of the allegations of the bill to support the decree entered upon the default of the defendants.   Our examination of the instrument has not led us to question the construction heretofore given it by this court, or to hesitate in following the ruling in McMullen *v.* Hodge.

We have seen that all of the defendants in error deraign title under Illies or his estate, and that Illies acquired his right at execution sale against Castro, to whom patent had issued some years before.   The plaintiff in error says that as Castro went into possession under an executory contract with McMullen, he neither could, nor did, dispute McMullen's title; and hence it is inferred that Illies bought, and those claiming under him or his estate hold their titles, subject to the same disability.   The principles relied on are thus stated by counsel: " A vendee under an executory contract cannot dispute the title of his vendor or his assignees." "If the vendee sets up an adverse claim there must be notice to the vendor, otherwise any title acquired by him inures to the benefit of the vendor." " On disputing his vendor's title, the possession must be returned."   " A purchaser at sheriff's sale takes only such rights and interests as the defendant in execution had."

The reason of the rule forbidding the person who has gone into possession under a contract to purchase, to dispute the title of his vendor, is believed to be the same as in case of landlord and tenant, viz.: " the injustice of allow-

ing a person who has obtained possession by admitting the title of another, to deny that title, and in case of failure in proof of it, hold the premises himself." Hilbourn v. Fogg, 99 Mass., 11. Says Justice Woodworth, speaking of the allowance of such a right to the vendee: "The consequence of such a doctrine would be in every case to require the vendor to make out a proper title, in case he attempts to regain possession; whereas, if it is not competent for the vendee to throw off his allegiance, the vendor can recover on the ground of his possession against him who may even have good title to the premises." Jackson v. Walker, 7 Cow., 642. The vendee "is not permitted to betray the possession with which he is entrusted." Tilghman v. Little, 13 Ill., 241. But notwithstanding the rule, it is well settled that the possession of the vendee may become so far adverse that he will acquire a title by limitation. Willison v. Watkins, 3 Pet., 43; Peyton v. Stith, 5 Pet., 485; Robertson v. Wood, 15 Tex., 1; Cook v. Knott, 28 Tex., 85.

The evidence in this case shows that Illies acquired possession only by suit against Castro and others, and after the judgment therefor was affirmed in this court. See Castro et al. v. Illies, 22 Tex., 479. The evidence is silent as to subsequent possession by Illies or either of the defendants in error, and for aught that the record shows, the plaintiff in error has had possession fully as much as defendants in error. In this state of the evidence, and after such a lapse of time and such an amount of litigation, it does not appear to us that the defendants in error are within the reason of the rule under consideration. Whatever may have been the title under which Castro proposed to hold at the time of the execution sale, Illies took all the title he, Castro, had under his patents, and acquired his possession in his own right by suit, and not in trust for Howard.

There is, in this state, a line of decisions leading to the

same result.   We have seen that the land which McMullen contracted to Castro was recent public domain, afterwards located and patented.   It has been repeatedly held that the vendee, on discovering that the land is vacant, is not bound to surrender or abandon possession, but may take steps to appropriate the land himself.   Rodgers *v.* Dailey, 46 Tex., 583; Wheeler *v.* Styles, 28 Tex., 243–4; Spier *v.* Laman, 27 Tex., 205; Jennings *v.* De Cordova, 20 Tex., 508; Cravens *v.* Brooke, 17 Tex., 268.

The application of the rule in the foregoing cases was in favor of pre-emptionists, but it is not perceived why the principle should not also apply in favor of a vendee who secures the land by locating a certificate.

Several of the rulings complained of are to the exclusion of evidence as to the title under which Castro held possession, and as to his declarations at the sale.   The court excluded such evidence only as to the period after Illies acquired his lien.   After the rights of Illies had attached, Castro's declarations should not be allowed to prejudice those rights, and were properly excluded.

To establish his averment that the patents to H. Castro on the N. Flores certificate had been cancelled, the plaintiff in error proposed to read a list, certified by Jacob Kuechler, Com. G. L. O., to be a correct list of the patents and field notes cancelled in this office on account of conflict with the McMullen grant in Medina county.   For the same purpose he offered a patent to Lorenzo Castro in 1870 by virtue of the Flores certificate.   This evidence was excluded and the point reversed by bill of excptions. The bill of exceptions does not state the ground of the objection.   If it was on the ground that the title of defendants in error could not be affected by a cancellation not shown to have been made by their authority, we think it was rightly done.   The statute provided a way by which the owner of a patent, issued by mistake, "upon any valid claim for land which is afterwards proved to be in con-

flict with any older title," might procure the cancellation
of that patent by the commissioner, and the delivery of
the certificate for relocation. Pasch. Dig., art. 4301.
But surely the statute never designed to give any effect
to such cancellation if procured by any other than the
just and legal owner of the land patented. It may be
that the exclusion was on the ground that there should
be in the general land office some record of the cancel-
lation of a patent, and that the proper way to show the
fact was for the commissioner to give a certified copy of
that record. If so, we are not prepared to say that the
court erred. Smithwick v. Andrews, 24 Tex., 490.

Sundry other questions of evidence, practice and plead-
ing are presented, on which we content ourselves with
merely announcing our conclusions.

After the defendants in error had filed their cross bill,
Howard had no right to dismiss his suit No. 322, if, in-
deed, after the consolidation, he could do so at all.

The affidavit of McLean was sufficient under the statute
to authorize the introduction of certified copies of the re-
corded patents. Pasch. Dig., art. 3716.

The execution from Bexar to Medina county was rightly
admitted. It was the same under which Illies' title was
supported in this court. 22 Tex., 479.

The affidavit of Mrs. Moser is badly worded, but we can-
not say that the court erred in holding it. sufficient under
the statute. Pasch. Dig., 3716. The partition between
the estate of Illies and I. A. & G. W. Paschal was not
void, although I. A. Paschal was dead at the time it was
confirmed. Milam Co. v. Robertson, 47 Tex., 222. More-
over, the evidence shows the acquiescence of all parties at
interest, and it is not for a third party to object to mere
irregularities. In view of the consolidation of the three
cases, we are unable to see that there was afterwards any
misjoinder of causes of action, or that the pleadings, as
amended, were subject to demurrer, or insufficient to au-
thorize the judgment.

We find no error entitling Howard to a reversal of the judgment as to any of the defendants in error, except Justine McKenzie, and so much of the judgment as is in favor of Justine McKenzie is reversed and the cause remanded for a new trial, as between her and Howard, she to pay one-half the costs of this appeal, including the costs of the transcript. In all other respects the judgment will be affirmed, Howard to pay one-half the costs, including the cost of the transcript.

REVERSED AND REMANDED IN PART,  
AND IN PART AFFIRMED.

[Opinion delivered November 3, 1880.]

ON MOTION FOR REHEARING.

GOULD, ASSOCIATE JUSTICE.— The judgment of this court was entered November 3, and this motion for rehearing was not filed until December 13, long after the expiration of the fifteen days within which the statute authorizes such motion to be filed. We think, however, that the facts stated in the affidavit accompanying the motion, and the fact that this case was transferred by the court of its own motion from Austin to Tyler, excuse the delay, and that the motion should be allowed and considered. Baldridge v. Scott, 48 Tex., 196–7. The motion stated that Waelder & Upson were the counsel for the opposing party, and a certified copy of the motion was accordingly duly served on Jacob Waelder on December 15. We find, however, that H. H. McLane was one of the appellees; that he does not appear to have been represented by Waelder & Upson, either in the district court or in this court, but was represented in the district court by different counsel, and was not represented by counsel in this court. The brief of Messrs. Waelder & Upson is signed by them as counsel for certain parties designated by name, not including McLane, and in the body of the brief the fact is

also alluded to that their brief was also in behalf of those parties. One of the principal grounds on which a rehearing is sought is peculiar to McLane, and denies that he was ever rightfully admitted as a party in the case. We are of opinion that the motion for rehearing should have stated the name and residence of McLane, and have thus sought to have a copy of the motion served on him. No such service having been sought or had, we are of opinion that the motion should be dismissed. If, on looking into the motion for rehearing and examining the written argument filed in its support, the court have been led to apprehend that it had fallen into error, either, as suggested in the motion, by overlooking or misapprehending the facts in the record, or by mistaking the law, we would have felt called on to inquire what course could be pursued to have the case again regularly before us for rehearing. We have, however, carefully examined the motion and argument, and have seen no cause to believe that we have fallen into any material error, either as to the facts or the law.

MOTION OVERRULED.