FINCH v. OGDEN.†

(Circuit Court of Appeals, Fifth Circuit.   December 28, 1909.)

No. 2,006.

1. PUBLIC LANDS (§ 24*)—SURVEY—MARKING CORNERS.
    It was the duty of the surveyor in making an initial survey of public
    lands to mark the corners of the surveys where it was practicable by calls
    for natural objects, or by placing some artificial monuments.
    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 31, 32; Dec.
    Dig. § 24.*]

2. PUBLIC LANDS (§ 107*)—PATENTS—SURRENDER—NEW PATENT—FIELD NOTES
    —CHANGE BY LAND OFFICE.
    Where plaintiff surrendered a patent issued in June, 1885, to be canceled
    by the commissioner of the general land office, and procured to be returned
    other corrected field notes of the survey which plaintiff claimed to own
    and obtained a new patent thereon, dated September 5, 1908, such minis-
    terial acts of the General Land Office occurring subsequent to the original
    location were ineffective to change the ownership of the land actually em-
    braced within the true boundaries of the section as originally located.
    [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 107.*]

3. BOUNDARIES (§ 40*)—CORNERS—SECTION LINE—CONTROL.
    In a suit to determine the division line between two surveys numbered
    43 and 44, respectively, it could not be held as a matter of law that the
    establishment of the common corner between surveys 29 and 30 and its
    relation to the division line between surveys 47 and 48 must control, and
    conclude all inquiry into the true location of the corners and lines of sur-
    vey 43.
    [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec.
    Dig. § 40.*]

    Shelby, J., dissenting.

In Error to the Circuit Court of the United States for the Northern District of Texas.

Trespass to try title by Alfred Ogden against John A. Finch. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Thos. F. Turner, M. A. Spoonts, George Thompson, and J. H. Barwise, for plaintiff in error.

I. W. Stephens and Geo. E. Miller, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge.   This action is the Texas statutory suit of trespass to try title to land. Alfred Ogden, defendant in error, was plaintiff in the court below, and plaintiff in error, John A. Finch, was defendant. The plaintiff alleged that he was the owner of a tract of 640 acres of land known as "survey No. 43" made in the name of the Southern Pacific Railway Company; that the defendant, Finch, owned survey No. 44 in the same block of surveys, which, properly located on the ground, was immediately west of survey No. 43; but that Finch, wrongfully claiming that No. 44 lies further east than it really does, is asserting title to more than one-half of No. 43, the

amount of No. 43 claimed by Finch being a strip of land 575 varas wide off of the west side of No. 43, which Finch erroneously claims as a part of No. 44; that No. 43 may be fixed on the ground by running course and distance from a survey No. 48, as that survey is fixed on the ground by certain improvements mentioned; that there was no real conflict between the land owned by plaintiff and that owned by defendant; but that there was a controversy between Ogden and Finch as to the true location of the boundary line between their respective lands; that in a former action brought by Ogden against Finch in the United States Circuit Court for the Northern District of Texas at Ft. Worth, being cause No. 386 on the docket of that court, and which was an action to determine the true location of the boundary line between survey No. 47, owned by Ogden, and survey No. 48, owned by Finch, a judgment was rendered on the verdict of a jury in favor of Ogden against Finch, which judgment was final; that the determinative issue in that cause was the true location of the southeast corner of survey No. 30, and the southwest corner of survey No. 29, in block No. 1, Southern Pacific Railway Company's surveys, in which block were Nos. 43, 44, 47, and 48, above named; that evidence was offered by both parties in that suit on the question of the true location of the common corner of 29 and 30, and the issue as to the location of that corner was submitted to the jury and a verdict returned in favor of Ogden on that issue, finding, in effect, that the original corner established as the common river corner of 29 and 30 had been found and identified and marked by a certain mesquite bearing tree as claimed in that suit by Ogden, and finding, in effect, against the contention of Finch in that case that the location of the surveys in block No. 1 should be determined by the southwest corner of survey No. 43; that this controverted issue of fact had in this way been settled in favor of Ogden, and that such finding controls the now disputed boundary line between surveys No. 43 and 44, and entitled Ogden to a judgment herein for the land in controversy as claimed by him.

The defendant pleaded the general issue, and specially that he was the owner of survey No. 44; that its true location depended on the location of certain natural objects and artificial objects on the ground called for in the original field notes of certain other surveys, namely, survey No. 31 in block No. 1, the field notes of which called for a certain hackberry tree, which, though gone now, the stump thereof exists, and the original corner, therefore, can be identified; that at a certain common corner of surveys 33 and 34 in this block is another original corner witnessed by a certain stone mound which still exists and can be identified; that the common corner of surveys Nos. 35 and 36 in this same block No. 1 can also be identified from a certain original stone mound; that the true location of survey 43 is controlled by calls in the corrected field notes of section 43, which were carried into patent issued by the state June 16, 1885, which field notes described a certain gyp rock which can be found and identified on the ground: that Ogden, by his own conduct, prevented the issues now before the court and involving the location of survey No. 43 from being determined in the former cause of Ogden v. Finch, in that during

the trial of that cause, and before the case was submitted to the jury, he (Ogden) expressly dismissed that cause as to survey No. 43, and proceeded to trial therein under his allegations as to title and possession of 47, and his further allegations as to a boundary controversy between surveys Nos. 47 and 48; that upon such dismissal by Ogden in that case an order and judgment was entered therein which expressly recited that the dismissal was without prejudice as to survey No. 43, now involved in litigation here; that Ogden took the course he did in the former suit in order that the issue of boundary as between surveys Nos. 43 and 44 should not be submitted to the jury for determination, but having elected to dismiss the suit as to the boundary line between 43 and 44, and having elected to withdraw this issue from the jury without prejudice, that he, Ogden, should therefore be estopped from asserting that the judgment in the former suit created an estoppel as to the dividing line between surveys Nos. 43 and 44, and that this line should now be located as the facts required, independent of the former judgment; that in the former suit Ogden relied on a certain patent to survey No. 43 issued by the state of Texas in 1885, the description in which patent located that survey by certain natural and artificial objects on the ground, particularly a certain gyp rock for its southeast corner, then known and well identified; that during the course of the former trial Ogden, as above shown, dismissed the cause as to survey No. 43, proceeding to trial as to survey No. 47.

Ogden in a supplemental petition alleged that the matters of fact and evidence were all put in issue and determined against defendant in cause No. 386, and were material controverted issues of fact and matters of evidence in that cause; and he therefore averred that the true boundary line between surveys Nos. 43 and 44 was determined by the former judgment.

The proof showed that Ogden had instituted suit No. 386, and had alleged that 47 was correctly described with reference to certain physical objects on the ground, setting them out in detail; that Finch claimed that 48 was located further east than it really should be, and included within its bounds a portion of survey 47, but that, in fact, there was no conflict between the two surveys, the west boundary line of 47 being the east boundary line of 48; that he was the owner of survey No. 43 in the same block; that Finch was claiming 44 to be located further east than it really was, and that Finch had included within the bounds of 44, as claimed by him, a strip of land about 575 varas wide off of 43; that the west line of 43 was the east line of 44; and that no real conflict could or did exist between these two surveys.

The prayer in that cause was that the plaintiff Ogden have judgment for the title to, and the possession of, the land sued for; that the boundary of said land be truly and correctly designated in the decree to be rendered; and that plaintiff have his writ of possession therefor.

The proof showed that Finch answered in the former case claiming that he was the owner of survey Nos. 44 and 48, and that 44, as claimed by him, was described thus:

"Beginning at a point North 72 degrees West and 999 varas distant from a certain gyp rock set in the ground by T. S. McClelland, known as the McClelland southeast corner of Survey No. 43, the gyp rock being marked 'X,' about 300 varas west of a small creek running into Red river, and from which gyp rock a point on Nelson Mountain bears North three degrees West about 1½ miles," etc.

From the rock located and described as above survey No. 44, claimed by defendant, was particularly described in the answer.

Finch further alleged that survey 48, claimed by him, was thus described:

"Beginning 2,850 varas west and 34 varas north of the southwest corner of Survey 44, as that corner was above located with reference to the gyp rock."

Survey No. 48 was then described by its field notes so that it could be identified on the ground from the gyp rock corner above mentioned.

At the trial of cause No. 386 much proof was offered by the respective parties and admitted as bearing on the issues made by their pleadings.

On the trial of this case in the Circuit Court, a witness, Mr. Barwise, testified:

"After the conclusion of the testimony (on the trial of cause No. 386) and when we undertook to present to the court our respective views with reference to the issue, the court's attention was called to the fact that as to 43 there was no issue to go to the jury in the opinion of counsel, for the reason that the field notes of the patent called for this gyp rock and the testimony had shown where that gyp rock was, and there was nothing left open to controversy, and that 43 must be located from its own calls if it could be, and it could be. On the presentation of that, my recollection is the court indicated that it agreed with counsel with reference to that contention as to 43, and thereupon Mr. Dycus (attorney for Ogden), perhaps not at that time, but either at that time or a little later, came back and stated (to the court) that by reason of that circumstance as to 43 he desired to take a nonsuit which should be without prejudice. That is substantially what occurred. A nonsuit was taken, and we proceeded to try out the issues before the jury. My recollection is that was done before the argument to the jury was begun."

As has already been mentioned, the judgment in case No. 386 recited:

"Upon motion by plaintiff, the cause was dismissed as to section 43, described in plaintiff's petition, and without prejudice, so that the case was tried only as to section 47."

Mr. Barwise, counsel for Finch in this case and who was counsel for Finch in cause No. 386, a part of whose testimony on the trial of this case has been given above, referring, in his printed brief, to the dismissal as to survey No. 43 in cause No. 386, says and contends that this dismissal came about for the reason that Finch introduced in evidence in that cause the patent to survey No. 43, the field notes of which tied this survey to the gyp rock above mentioned, and which gyp rock was identified on the trial of that case, and that survey No. 43, according to the field notes in the patent, not only fixed its southeast corner at the gyp rock, but its other lines were to be determined by course and distance only, no other objects or corners called for in the patent being found or identified. This situation was

called to the attention of the court by counsel for Finch, and the point made that there was nothing left open to controversy as to the location of 43; that, without dispute, 43 must be located by the gyp rock, which, when done, fixed its lines according to the contention of Finch. Mr. Dycus, who then represented Ogden, on account of the situation referred to, stated to the court that he desired to take a nonsuit as to No. 43, which he desired to have done without prejudice, and the judgment dismissing as to 43, above quoted, was accordingly under those conditions and circumstances entered. So that the case (No. 386) was tried only as to section 47.

We do not deem it necessary to summarize the charge of the court. We give, however, the opening paragraph, viz.:

"The plaintiff sues in trespass to try title for survey No. 47 in block 1, of Southern Pacific Railway Company's survey in Hall county."

The judgment in cause No. 386, which was offered in evidence on the trial of the case we are now considering, recites the verdict of the jury in that cause to have been as follows:

"We, the jury, find for the plaintiff the folllowing described tract of land, to wit:

"640 acres of land situated in Hall county, Tex., on the north side of Red river known and described as survey No. 47, in the name of the Southern Pacific Railroad Company, in block No. 1, made for the company.

"Beginning at a stake in the north bank of said river; thence north 84' east, 956 varas, a corner for the southwest corner of survey No. 46 in the same name; thence north 3,784 vrs. to a corner; thence west 950 varas; thence south at 285 vrs. the N. W. corner of No. 48, continue south in all 3,850 vrs. to the place of beginning.

"And that said section No. 47 is truly and correctly described by and with reference to physical objects on the ground as follows:

"Beginning at a point for the S. W. corner of 47 as hereinbefore mentioned; thence N. at 511.4 vrs. the dwelling now occupied and claimed by defendant as his own, bears east 575 varas, continue N. crossing the fence and extending in all 3,850 vrs. for the N. W. corner of survey No. 47; thence east 950 vrs. to a post marked 'N. E. 47'; thence south crossing a wood and wire fence 3,784 vrs. to the southeast corner of said No. 47; thence westerly 956 vrs. to the place of beginning."

The eminent counsel for the defendant in error, construing this verdict by his view of the case, has interpreted or translated it to read:

"We, the jury, find from the testimony that the common corner of 29 and 30 has been identified by a marked mesquite bearing tree as the original corner of the locating surveyor, George Spiller, and we find from the testimony that by running from this corner course and distance the original dividing line between surveys 47 and 48 as that line was located by the original surveyor is ascertained and determined, and that the southwest corner of survey 43 mentioned in the testimony has not been identified as the original corner."

The verdict rendered by the jury is written in our vernacular, and we will use it.

The record proof introduced to show the issues made by the pleading in No. 386 and other evidence in support thereof and of the nonsuit taken as to section 43, and the charge of the court to the jury, and the verdict and the judgment thereon, was admitted on the trial of this case, and the field notes of surveys of other sections, and oral

testimony by surveyors and other witnesses bearing on the issues, all of which is set out in the bill of exceptions. After which the bill of exceptions recited that:

"After the introduction of the foregoing testimony and upon argument of the law of the case to the court by counsel for the respective parties, it was the opinion of the court that the plaintiff herein was entitled to have a verdict directed in his favor on the issue of res adjudicata presented by the pleading and the proof; that is to say, it was the opinion of the court that the judgment in cause No. 386 on the docket of the Circuit Court of the United States for the Northern District of Texas, at Ft. Worth, conclusively established the common corner between surveys No. 29 and 30 at the place contended for by the plaintiff; that the fixing of this corner as contended for by the plaintiff conclusively fixed the disputed boundary lines in question in this suit, according to the contentions of the plaintiff in this suit, and left open, therefore, no question for litigation as between the parties, since the said common corner of surveys No. 29 and 30 had been established, and therefore the court peremptorily directed the jury to return a verdict in favor of the plaintiff, and in response to which peremptory charge the verdict of the jury herein was accordingly returned."

This verdict was:

"We, the jury, find for the plaintiff, and fix the boundary line between surveys 43 and 44, block 1, S. P. Ry. Co. in Hall county, Tex., in accordance with the verdict and judgment rendered in cause No. 386, decided in the Circuit Court of the United States for the Northern District of Texas, at Ft. Worth, by course and distance as given in the field notes of surveys 44, 45, 46, 47, and 48 in said block from the dividing line between said surveys 47 and 48 as established by said judgment and as described in plaintiff's petition herein."

On this verdict judgment was rendered for the plaintiff.

Sixteen specifications of error are assigned. They are largely argumentative, and their effect is that the Circuit Court's rulings on the matter of res adjudicata as put in issue by the plaintiff's pleadings and proof offered in the case were erroneous. The judges of this court are of the opinion that they were erroneous, and that the judgment of the Circuit Court must be reversed on that ground.

The act to encourage the construction of railroads in Texas by donations of lands was passed January 30, 1854. Laws 1854, p. 11, c. 15. The first section of the act provided that any railroad company constructing within the limits of Texas a section of 25 miles or more of railroad shall be entitled to receive from the state a grant of 16 sections of land for every mile of road so constructed and put in running order. The third section provided that it shall be the duty of said company to cause to be surveyed the land so designated into sections of 640 acres each, and in square blocks of not less than 6 miles, unless prevented by previous surveys or a navigable stream. By the act of February 8, 1860, this third section was amended so as to leave out the words, "and in square blocks of not less than six miles." Paschal's Dig. (2d Ed.) p. 827, art. 4947.

The character of the country embracing the location of the certificates which now claim our attention is amply shown in the report of the decision of the Supreme Court in the case of United States v. Texas, 162 U. S. pp. 85, 86, 16 Sup. Ct. 725, 40 L. Ed. 867. The territory west of the 100th meridian and north of the south fork of Red river belonging to Texas was not divided into counties until August

21, 1876, when Hall county and a large number of other counties in that territory were created by the act then passed. Acts 15th Leg. p. 234, c. 144. These locations were made in the fall of 1874 by George Spiller, the county surveyor of Jack county; the land being then embraced in the land district for which he was surveyor. In 1883 the Donley land district embracing Hall county was defined, and the county surveyor of Donley county was made the surveyor of that district. 2 Sayles' Civ. St. 1888, art. 3833a. These surveys of George Spiller were evidently the first locations of railroad certificates made in the Jack land district. The surveyor in returning the surveys to the General Land Office designated these locations as block No. 1, the beginning corner of the first section of which being marked by the monument erected by the government on the 100th meridian at a point near the north bank of Red river (the south, or Prairie Dog fork). While it is perhaps technically correct to call this a block of surveys, it is, in fact, a very long string of adjoining surveys bounded on the south by Red river and extending west on the north bank of that stream for more than 25 miles, if not for more than twice that distance. One of the maps in evidence shows the sections from 29 to 50, inclusive, as fronting on the river, and the plaintiff's witness C. H. Chipman said in his testimony on the stand:

"I examined the other corners of this same block of work. I examined the common north corner of 125 and 126."

Whether 125 and 126 were located on the north bank of the river the maps in evidence do not show. One of the maps does show that section 120 of this block was located north of sections 49 and 50, and there is an intervening location No. 11, the north line of which is identical with the south line of section 120, as far as section 120 extends east. When these locations were made, the land had practically no market value. Owing to the nature of the soil and the character of the seasons, the river and the creeks that flowed into it were then constantly changing, and ever since have been constantly changing, the line of their current and the line of their respective banks. The bed of the river where these surveys fronted is now approximately three-quarters of a mile wide. It flows full in seasons of flood, and in seasons of drought it has a narrow and shallow channel. Parker's creek, the mouth of which is called for in some of these surveys as a point, flows into the river here, and now shows a channel or bed with a width of 150 yards where it flows into the river. There are a few trees of hackberry, china, and mesquite, of small size, on the banks of the streams, and there are bunches of mesquite bushes as remote from the streams as the north line of these surveys. Suitable rock for marking corners could not often be obtained, and, when obtainable and used at the corners on the river, gave little assurance of permanency on account of the shifting character of the shore, rendering them liable to be washed away. The beginning corner of the block No. 1 and of section No. 1, being identical and marked by the initial monument, remains permanent. It was the duty of the surveyor to mark the corners of the surveys, where it was practicable, by calls for natural objects or by placing some artificial object at the

corner. As between the parties to this suit, it has been established that the common corner of sections 29 and 30 can be and has been identified on the ground where it was placed by the locating surveyor.

The field notes of the survey, section 43, block 1, returned to the General Land Office by George Spiller November 30 or December 1, 1874, were afterwards corrected by T. S. McClelland, surveyor of the Donley land district, and filed in the General Land Office February 24, 1885, and the patent issued thereon June 16, 1885. Since the trial of the case 386, supra, the defendant in error has surrendered the patent issued June 16, 1885, to be canceled by the Commissioner of the General Land Office, and has procured to be returned other corrected field notes of this survey (section 43), and obtained a new patent thereon dated the 5th of September, 1908. These ministerial acts of the General Land Office occurring subsequent to the original location have not changed the ownership of the land actually embraced in the true boundaries of section 43 as originally located. What effect (if any) this doctoring of the evidence of title may at any time have had on the power of the Circuit Court to exercise jurisdiction with reference to the true boundaries of section 43, or the settlement of the dispute between the parties here as to the same, we do not deem it material for us to consider. We do not at all rest our decision on this subsequent action of the land office.

The testimony offered for the defendant on the trial of this case tended to show that the original southwest corner of section 31, being also the southeast corner of section 32, was witnessed by a certain hackberry tree according to the field notes of these sections, and had been found and identified. It also tended to show that the original southwest corner of 35 and the southeast corner of 36, their common corner, has been identified; also the common river corner of sections 33 and 34. The witness Chipman says that from the initial monument to the corner of 29 and 30 was something like 23 miles. To the corner of section 43 it is 8 or 10 miles further. It has long been settled in Texas that the call for a beginning corner of a survey does not rank any other corner of the same survey when satisfactorily established. Now, this so-called block of surveys has no block lines other than the east line of section No. 1, and the west line of section No. 50 (the limit west on the plat in evidence), the south lines and the north lines (which do not constitute a direct line, but approximately conform to the course of the river by the necessary off-sets) of the different sections which front on the river. We cannot find all of the different sections in this block by course and distance from the initial monument, which is fixed and certain, because we are interrupted and controlled by the tracks of the locating surveyor. We have already noted that the testimony offered for the defendant tended to show the surveyor's tracks, viz., natural and artificial objects called for by him, at the corners of certain sections lying between section 30 and section 43. It seems clear to us, both from the nature of the case and from the nature of the proof presented in the court below, that to hold as a matter of law that the establishment of the common corner between section, 29 and 30 in its relation to the division line between sections 47 and 48 must control

and conclude all inquiry into the true location of the corners and lines of section 43 would put more strain on the common corner of 29 and 30 than it can bear.

The learned and eminent counsel for the defendant in error to support his contention cites Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Mason Lumber Co. v. Buchtel, 101 U. S. 638, 25 L. Ed. 1072; Bissell v. Spring Valley Township, 124 U. S. 225, 8 Sup. Ct. 495, 31 L. Ed. 411; Hanna v. Read, 102 Ill. 596, 40 Am. Rep. 608; Oldham v. McIver, 49 Tex. 556; Cook v. C. L. & L. Co. 6 Tex. Civ. App. 326, 25 S. W. 1034. These are leading cases. We have considered them with care. It is not necessary for us to point out their distinguishing features. In the view we have taken of the case before us, these cited cases do not sustain the action of the Circuit Court in giving the jury the peremptory charge to find the verdict for the plaintiff.

The judgment of the Circuit Court is reversed and the cause will be remanded, with the direction to that court to award the defendant below a new trial.

Reversed and remanded.

SHELBY, Circuit Judge, dissents..