**STATE et al. v. ALFORD et al.**

No. 11566.

Court of Civil Appeals of Texas. Galveston.
Nov. 18, 1943.

Rehearing Denied Dec. 2, 1943.

Gerald C. Mann, Atty. Gen., Cecil C. Cammack, Chester E. Ollison, and Geo. W. Barcus, Asst. Attys. Gen., and Cofer & Cofer and W. T. Williams, all of Austin, for appellants the State et al.

Turner, Rodgers & Winn, Carlton R. Winn, and George S. Terry, all of Dallas, for appellee Stanolind Oil & Gas Co.

Cary M. Abney, of Marshall, for appellees W. O. Alford, Mrs. Gussie McClellan and Mrs. Jessie Minshew et al.

David B. Trammell, of Fort Worth, for appellee Devonian Oil Co.

Green & Farmer, of Tulsa, Okl., for appellees Bay Oil Corporation, S. C. Bryant, Frank W. Files, and J. C. Oliphant.

R. H. Whilden, Scott W. Key, and Vernon Elledge, all of Houston, for appellee Shell Oil Co., Inc.

MONTEITH, Chief Justice.

This suit was brought by the State of Texas in regular form of trespass to try title for the recovery from numerous defendants of 147 acres of land situated in Rusk County, Texas, alleged to be unsurveyed public land of the State of Texas.

S. E. Damon, who claimed an interest in said land under a mineral lease from the State, was originally named a party defendant. Later Trem Carr and A. B. Carr, individually and as trustee, intervened, claiming a leasehold interest therein as assignees of S. E. Damon. By cross-action, they asserted their claim to the land in controversy under his lease from the State.

Defendants, Stanolind Oil & Gas Company and others, appellees herein, answered by defensive pleas and by cross-action in form of trespass to try title in which they attacked the validity of a corrected patent of the H. B. Dance survey and specially pled the facts alleged to show that said corrected patent was void and that it constituted no part of their chain of title.

The case was tried before the court with a jury. At the conclusion of the evidence both appellants and appellees filed their separate motions for an instructed verdict. The court granted appellees' motion and rendered judgment in favor of appellees, denying recovery of the land in controversy to the State of Texas and to Trem Carr and A. B. Carr, quieting appellees' title to the land in controversy and decreeing that a corrected patent of the H. B. Dance survey which had been issued October 11, 1860, was null and void and removing it as a cloud upon the estate of appellees. The court allowed an attorney appointed to represent the unknown heirs of Jas. A. S. Parsons a fee of $1,000, said fee to be assessed as costs of the suit.

The State of Texas and Trem Carr and A. B. Carr have appealed.

This suit involves the location on the ground of the Francisco Cordova league survey and the H. B. Dance 640-acre survey as originally located on January 9, 1849, and patented on November 21, 1851.

The Cordova league survey was titled on August 26, 1835, to Francisco Cordova under field notes made by the surveyor, Thomas J. Golightly, which called for a survey 5,000 varas square.

On September 30, 1835, Francisco Cordova conveyed the entire Cordova league to one Frost Thorne. In 1844 Frost Thorne employed a surveyor, Frederick Ham, to make a resurvey of said league of land. In making such survey Ham located its south line as originally established by Golightly, but located its north line at a point called for as being 5,000 varas north of its south line but between three and four hundred varas short of the north line as established by Golightly.

On February 8, 1838, certificate No. 223 for a one-third league of land was issued by the Republic of Texas to H. B. Dance. On January 11, 1848, H. B. Dance assigned said certificate to James A. S. Parsons. On January 9, 1849, A. J. Smith, deputy district surveyor of Rusk County, surveyed 640 acres out of said certificate for Parsons, and on November 21, 1851, patent 235 was issued to him therefor. Said certificate No. 223 was later exhausted by the issuance of additional patents. The position on the ground of the said H. B. Dance 640 acre survey as originally patented is undisputed. It was patented under the following field notes:

"Beginning at a mound the north west corner of Francisco Cordova's League;

"Thence north 1,900 vs. to post from which a pine 14 in. diam. bears S. 10 W. 4⁶⁄₁₀ vs.dis a pine 10 in diam bears N 10 E 5⁶⁄₁₀ vs.dis;

"Thence East 1,870 vs to branch course north 1,900 vs to post from which a pine 30 in diam bears N 72 W 1⁶⁄₁₀ vs.dis. a pine 12 in diam bears N 81 E 8 vs.dis;

"Thence South 1,900 vs to post on the north boundary line of said Francisco Cordova's League from which a pine 12 in diam bears S 75 E 3⁸⁄₁₀ vs dis a pine 12 in diam bears N 23 E 7⁸⁄₁₀ vs. dis;

"Thence west with said north boundary line 1,900 vs to the beginning."

It is admitted by the parties to the suit that these field notes include the land in controversy.

It is undisputed that the accepted south line of the Cordova league is 6,930 varas south of the undisputed and accepted north line of the Dance survey, a difference of only 30 varas between the combined north and south lines of the two surveys as called for in their original field notes, and that a patented area extended from the admitted south line of the Cordova league to the admitted north line of the Dance 640-acre survey as originally patented.

On January 9, 1849, A. J. Smith, deputy district surveyor of Rusk County, also located the S. P. Hollingsworth survey. The field notes of the Hollingsworth survey calls for its beginning corner on the north boundary line of the Cordova league at the southeast corner of the H. B. Dance survey and to run thence 2,713 varas with the Cordova north boundary line to southwest corner of the John M. Barton survey. It is undisputed that the line called for as being the north boundary line of the Cordova league, the admitted south lines of the Dance and Hollingsworth surveys, is the line located by Ham in 1844 as the north line of the Cordova league and that there was a difference of between 400 and 500 varas between the Ham line and the north line of the Cordova league as located by Golightly.

The land in controversy is described by appellants as "Beginning at the southwest corner of the S. P. Hollingsworth Survey as patented and now recognized on the ground * * *. Thence West with the North line of the F. Cordova League as now recognized on the ground 1,976.7 varas

stake * * * at the Northwest corner of said Cordova League as now recognized on the ground; Thence N. O deg. 18 min. E. 420.2 varas a stake at the Southwest corner of the H. B. Dance Survey 1,515 varas from its Northwest corner, according to its re-patent in 1860; Thence E. 1,975.5 varas a stake at the Southeast corner of the said Dance Survey in the West line of the S. P. Hollingsworth Survey; Thence South O deg. 8 min. West 420.2 varas to the place of beginning."

It is apparent from this description that the land involved herein is either a part of the patented area of the Francisco Cordova league survey or the H. B. Dance 640-acre survey as originally located under said patent 235.

On December 18, 1852, James A. S. Parsons, by the identical field notes under which the original H. B. Dance 640-acre patent was issued, conveyed said 640 acres of land to William Harnage by general warranty deed. The land described in this deed includes the vacancy involved in this suit. Harnage immediately went into possession of the land and built a house thereon, which is standing today. The house is located 395.15 varas north of the Ham line and is within the apparent conflict between the Cordova league as located by Golightly and the original H. B. Dance survey.

By instrument dated February 12, 1857, William Harnage had acquired the interest of Wade Love, the owner of the north end of the west half of the Cordova league, under a regular chain of mesne conveyances, to a tract of land called for as being "a strip of land supposed to be one hundred and sixty eight acres more or less, between that part of the strip or belt of land between the old league line and the new line run through the north end of the league * * *."

By deed dated March 22, 1869, William Harnage conveyed to Elijah Cravens the 640 acres of land by the field notes under which the original H. B. Dance survey was located and its patent issued.

On September 18, 1860, James A. S. Parsons filed the following affidavit with the Commissioner of the General Land Office of the State of Texas:

"The State of Texas
"County of Rusk
"Before me the undersigned authority personally appeared James A. S. Parsons to me well known who states: that he is the assignee of Patent No. 235, Vol. IV issued to him as assignee of H. B. Dance for Three 613040/1,000,000 Labors of Land situated in Rusk County said State about 12 miles N 55 deg. W from the town of Henderson; that he is the just and legal owner of the rights conveyed by said Patent; that conflicts with the Francisco Cordova League of land, if any, and that he desires the Patent described in this affidavit cancelled and another issued for the part not in conflict.

"James A. S. Parsons

"Sworn to & subscribed before me and given under my hand and seal of office at office in Henderson this 16th day of August, A. D. 1860.

"P. G. Whetstone
"Clerk County Court
"Rusk County, Texas."

He also filed in the General Land Office a set of corrected field notes signed by James S. King, surveyor of Rusk County in which the Dance survey is described as follows:

"A corrected Survey of 2,882,773 sq varas or 510½ Acres made for J. A. S. Parsons by virtue of Certificate No. 223 Issued to H. B. Dance by the Board of Land Commissioners of Nacogdoches County on the 8th day of Feb. 1838, for one third of a league Situated in Rusk County about 12 miles N 55 W from Henderson. Beginning at a Mound the N. W. Corner of the Francisco Cordova League Thence North 1,515 varas to a post from which a Pine 14 inches in Diameter bears S 10 W 4⁴⁄₁₀ varas dist a pine 10 in dia bears N 10 E 5½ varas dist Thence East 1,870 vs to a Branch Course North in all 1,900 vs to a post from which a pine 30 inches diameter bears N 73 E 1½ vs a pine 12 inches diameter bears N 81 E 8 vs dist Thence South 1,515 vs. to a stake on the North Boundary line of the aforesaid Francisco Cordova league from which a Red Oak 30 inches diameter bears N 81 W 7⁴⁄₁₀ vs a pine 36 in dia bears N 43 W 7⁴⁄₁₀ vs Thence west with the North Boundary line of the Cordova League 1,900 vs to the place of beginning.

"Surveyed May 14th 1860.
"James C. King S. R. C.
"C. A. Haden
"W. E. Sammons Co.
"I, James C. King, Surveyor of Rusk County, certify on my oath of office that I made the above described survey on the ground and that I found the original survey

and patent to conflict with the Francisco Cordova league to the amount of one hundred and twenty nine acres and 3266 varas and that the corrected field notes are correct and according to law and that they are Recorded in Book D page 306 in my office in Henderson.

"James C. King S. R. C."

These field notes show the following facts: (1) The northwest corner of the corrected Dance survey calls for the same two witness trees that are called for in the original Dance field notes; (2) the northeast corner of the corrected Dance calls for the same witness trees and same bearings and distances as are called for in the original field notes; (3) the field notes of the corrected Dance calls for the southeast corner and south line of the Dance to adjoin "the north boundary line of the aforesaid Francisco Cordova League." These calls definitely fix the location of the north line of the corrected Dance as it was originally located by Smith and locates the land in controversy within the patented area of the Cordova and original Dance surveys.

On September 11, 1860, the State issued a corrected patent to James A. S. Parsons under said corrected field notes. A copy of this corrected patent was filed in the Deed Records of Rusk County, to which is attached a certificate of the Commissioner of the General Land Office which reads:

"General Land Office
"Austin, Texas, Oct. 11th, 1860.
"I Francis M. White Commissioner of the General Land Office of the State of Texas do hereby certify that Patent No. 235, Vol. No. 10, First Class for three 613,040/1,000,000 labors of land, granted to James A. S. Parsons assignee of Henry B. Dance on the twenty first day of November eighteen hundred and fifty one has been cancelled under the act of February 3, 1854, in consequent of conflict with an older title and that Patent No. 172, Vol. No. 15, First Class for two 882,773/1,000,000 Labors of land has this day been issued in lieu of part thereof.

"In testimony whereof I hereunto set my hand and affix the seal of said office the day and date first above written.
"Francis M. White."
(Seal)

On November 5, 1860, the Land Office issued to James A. S. Parsons unlocated balance certificate for 730,276 square varas of land. Patents were issued covering this unlocated balance certificate in separate parcels in various counties of the State.

At the time of the application by James A. S. Parsons for the corrected patent on the H. B. Dance 640-acre survey, William Harnage was the owner of the entire survey under deed from Parsons, and was also the holder of a conveyance from Wade Love of 168 acres of the area of the Dance survey which was claimed to be in conflict with the Cordova League. William Harnage was in actual possession of and was living on the land which Parsons attempted to relinquish by applying for a corrected patent. There is no showing in the record that he had notice of or that he was in any way a party to any of the proceedings under which this corrected patent was issued.

The controlling question presented in the appeal is whether the action of the Commissioner of the General Land Office of the State of Texas in issuing to James A. S. Parsons a corrected patent of the H. B. Dance survey on September 11, 1860, was effective to divest William Harnage of his title to the land sought to be eliminated from the original patent of the Dance survey by the affidavits of James A. S. Parsons and the surveyor, James C. King, and to constitute such land unsurveyed public land subject to lease by the State.

A statute authorizing the cancellation of patents and the issuance of corrected patents in certain cases (Article 4301, Paschal's Digest, Vernon's Ann.Civ.St. art. 5409 et seq.) was enacted on February 3, 1854. It reads:

"An act to authorize the cancellation of Patents in certain cases.

"Section 1. Be it enacted by the Legislature of the State of Texas, That where a patent to land has been or may hereafter, through mistake, be issued, upon any valid claim for land which is afterwards found to be in conflict with any older title, it shall be competent for the owner of such patent to return the same to the Commissioner of the General Land Office for cancellation, and should it appear from the records of the General Land Office, or from a duly certified copy of a judgment of any court of competent jurisdiction, before which the title to such land may have been adjudicated, that such conflict really exists, and from proper evidence exhibited to said Commissioner, that the party applying is

just and legal owner of the patent thus presented, it shall be lawful for him to cancel the patent and deliver the certificate or other evidence of claim upon which it is issued to the owner for relocation.

"Sec. 2. That in cases where there is only a partial conflict, the Commissioner of the General Land Office may, under like circumstances, and in like manner as is provided for in the first section of this act, cancel any patent presented to him, and issue a patent * * * as may not be in conflict with the older title, where from the field notes the same may be done, and also issue to such applicant a certificate for the unlocated balance of the claim embraced in such cancelled patent, which certificate may be located, surveyed under, and patented upon as in other cases.

· "Sec. 3. That this act shall be in force and take effect from and after its passage."

█ In construing this act the Supreme Court of Texas has expressly held that only the owner of the land involved can properly apply for a corrected patent or surrender his old patent, and that the cancellation of a patent not shown to have been authorized by the owner is without effect. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226; Howard v. McKenzie, 54 Tex. 171; Guenther v. Robison, 118 Tex. 485, 17 S.W.2d 765; Jones v. Lee, 86 Tex. 25, 22 S.W. 1092; Johns v. Pace, 26 Tex. 270; Finch v. Ogden, 5 Cir., 175 F. 20.

█ It is also the settled law in Texas that a land certificate, when located on realty, becomes merged in the realty and must thereafter follow the realty in transfer thereof. Parker v. Walker, 15 Tex.Civ. App. 370, 39 S.W. 611; Hearne v. Gillette, 62 Tex. 23; East v. Dugan, 79 Tex. 329, 15 S.W. 273.

In the instant case it is undisputed that the entire certificate No. 223 was issued to H. B. Dance; that it became merged into the H. B. Dance survey in Rusk County, Texas, to the extent of 640 acres and was thereafter patented, on November 21, 1851, to James A. S. Parsons. The certificate thereby became a part of the land described in the patent and the ownership thereof, to the extent of this 640 acres, thereafter passed with the land by deed dated December 18, 1852, from James A. S. Parsons to William Harnage.

█ James A. S. Parsons, having parted with his title to said land and his interest in said certificate on December 18, 1852, by his deed to William Harnage, could do nothing to disparage the title Harnage had to said land by his action in attempting to cancel the original patent of the H. B. Dance survey and to secure a corrected patent for himself from the Commissioner of the General Land Office, since, under above authorities, William Harnage was the only person empowered under the Act of 1854 to present an application to the Commissioner of the General Land Office for a corrected patent or to whom a corrected patent could properly be issued.

█ Appellants contend, however, that appellees had constructive notice of the proceedings in connection with the cancellation of the original patent and of the reissuance of a corrected patent. This contention cannot be sustained, since the registration of an instrument is notice only to those who claim through and under the grantor or mortgagor by whom the instrument was executed. White v. McGregor, 92 Tex. 556, 50 S.W. 564, 71 Am.St. Rep. 875; 36 Tex.Jur. 476.

The corrected patent of the Dance survey was issued on September 11, 1860, eight years after Harnage acquired the land from Parsons, and was therefore not a part of the chain of title of Harnage or his vendees herein.

Under the authorities cited, the original patent to the H. B. Dance survey is, we think, still in force, and since the strip of land involved in this suit is a part of the patent to the H. B. Dance survey, as proven by uncontroverted facts, we think that there was no issue to be submitted to the jury by the trial court, and that therefore his action in directing a verdict and in holding that the land involved was in the original Dance patent must be sustained.

We have fully considered each of the points presented by appellants in their brief. None of them, in our opinion, show error in the record which requires a reversal of the judgment by the trial court, which will be in all things affirmed.

Affirmed.